## NASH et al. v. SHELL PETROLEUM CORPORATION et al.

### No. 8570.

Court of Civil Appeals of Texas. Austin.

May 4, 1938.

Rehearing Denied Oct. 26, 1938.

Wm. McCraw, Atty. Gen., and Harry S. Pollard, Asst. Atty. Gen., for appellant Railroad Commission of Texas.

Saye & Saye, of Longview, for appellants T. P. Nash and H. B. Turner.

A. E. Groff and R. H. Whilden, both of Houston, W. H. Francis and Walace Hawkins, both of Dallas, and Greenwood, Moody & Robertson, of Austin, for appellees.

McCLENDON, Chief Justice.

This is a Rule 37 case. The appeal is from a final judgment setting aside a permit to drill an oil well upon a half acre tract in the East Texas oil field.

Title to the tract was segregated by deed conveying the fee simple title to an adjoining tract of 105 acres on November 14, 1929, about a year before the discovery of oil in the East Texas field. Under our holding in No. 8613, Shell Pet. Corp. v. Railroad Commission, 116 S.W.2d 439, the voluntary subdivision rule does not apply, and appellants Nash and Turner (holders of the permit) were entitled as a matter of law to drill one well on the tract. Stanolind Oil & Gas Co. v. Commission, Tex.Civ.App., 96 S.W.2d 664.

It is contended here as it was in No. 8613, that the voluntary subdivision rule applies to all subdivisions of land subsequently to the original promulgation of Rule 37 in 1919. That contention was overruled in No. 8613; but in view of some of the holdings in the opinion in that case, the writer feels called upon to make an explicit statement of his reasons for concurring in that decision.

Rule 37 as originally passed provided for exceptions "to protect vested rights." R. R. Com. v. Bass, Tex.Civ.App., 10 S.W.2d 586. The quoted wording has been changed to read "to prevent confiscation of property." We have no information regarding the reason for this change in wording. We perceive no substantial distinction between the protection of vested rights and prevention of confiscation of property as applied to oil well spacing. None is suggested in any case brought before us. We conclude that the two expressions were used synonymously. The rule's objective is conservation of a natural resource. Bass Case, above. It constitutes a limitation or restraint upon the unlimited right of capture. One of the main purposes of this exception was to protect the vested right of capture of owners of tracts so small or of such irregular shape as to preclude development under the general rule. The Commission has uniformly given this exception this construction, so far as we have been able to determine. Appellees contend that the exception applies only to subdivisions antedating the original promulgation of the rule. Whether the Commission had the power to omit the exception altogether, and apply the general rule to all tracts too small or of too irregular shape to develop under the rule, regardless of the date of the subdivision, does not now concern us. The Commission did authorize the exception. That it had the power to do so has never been seriously questioned; but, on the contrary, has been uniformly recognized. Having made the exception, we have reached the conclusion that it did not have the power to limit it to subdivisions antedating the rule. This conclusion is predicated upon the following considerations.

The Commission has only such powers as are expressly delegated to it, or which are essential to the exercise of its expressly delegated powers. Necessarily, therefore, its rules and regulations must bear some reasonably appropriate relation to the objective implicit in the expressly delegated powers—in this instance the conservation of oil (or gas) a natural resource of the state. The Commission's jurisdiction does not extend and has no relation to the transfer of real estate generally. To make a distinction as to such transfers, based alone upon date, would be discriminatory against one class of transfers and therefore unreasonable and arbitrary, unless there were some reasonable basis for the classification. It is contended that such reasonable basis of classification lies in the fact that all land in the state is potentially oil producing and therefore all transfers of title subsequently to the rule's promulgation are, as a matter of law, made with constructive knowledge of the rule and its application to the title, if and when oil is ever discovered under the land involved. The statement is not accurate except as regards lands actually containing oil deposits. Lands not containing such deposits cannot in any sense be classed as potentially oil producing. The asserted potentiality of all unproven territory could exist only by virtue of lack of knowledge whether oil in fact existed therein. The actual proven territory in the state, although widely distributed, constitutes a very small fraction of the state's vast area. Furthermore, the inherent power of the state to conserve its natural resources has always existed, and owners of real estate were charged with knowledge of that power before as well as after promulgation of Rule 37. Why then should an exception to a conservation rule be made in favor of transfers antedating the rule and denied to transfers postdating it. We do not think that the fact that oil might some day be discovered under the land furnishes a reasonable basis for the distinction, for this fact existed before as well as after the rule. To limit the exception to such prior transfers would require of all landowners in the state, at their peril, to make provision against operation of the rule in every conveyance or other transfer of title. If an exception to the rule was advisable as a protection to prior transfers of title, we think it equally advisable as to subsequent transfers. We perceive no substantial basis for the distinction.

The voluntary subdivision rule, created by court construction, was essential to the preservation of the spacing rule and the stated exception. Without it the spacing rule would have been unenforceable as to anyone who desired to circumvent it. Its basis, and only basis, is to prevent circumvention and thereby to preserve and make effectual the spacing rule. The several applications of the voluntary subdivision rule have been predicated upon this basis—prevention of circumvention of the spacing rule. These applications present a variety of situations—among them the following: severance of the oil title by lease, absolute conveyance or otherwise, in which case the act of severance is necessarily for oil development and is therefore done with reference to all applicable conservation regulations; land situated in or in reasonable proximity to proven territory; land in proven territory owned in undivided interests. The contention is sometimes made that this last holding contravenes the vested right of partition. Such, however, is not the case. The right of partition is not disturbed. In so far as the oil title is concerned the rule merely affects the manner of partition. Partition in kind is not a vested right. These applications are illustrative of the basis of the voluntary subdivision rule. The question of intent is not material. The effect of the act of segregation as applied to the particular fact situation is the controlling factor. On the other hand, if the purpose of the subdivision be in fact to circumvent the spacing rule, the voluntary segregation rule would no doubt be applied regardless of the situation otherwise. In no case, where the question was expressly raised, has it been judicially determined that the voluntary subdivision rule has been applied on the sole ground that the subdivision postdated the original promulgation of Rule 37. That rule as originally promulgated did not expressly so provide, nor do we believe its necessary implication calls for such construction. To so construe it would, as we have already stated, be unreasonable.

The writer does not concur in the holding in No. 8613 to the effect that the 1935 amendment to R.C.S., Art. 6014a, Vernon's Ann.Civ.St. art. 6014a, deprived the Commission of the power to apply Rule 37 to other than proven territory. The pertinent portion of the amendment reads: "Nothing in this Act shall be construed as

granting to the Commission any power or authority to restrict, or in any manner limit the drilling of wells for the purpose of exploring for crude petroleum oil or natural gas or both in territory not known to produce either such oil or gas."

The purpose of this amendment was clearly to deny the Commission power to prevent or restrict oil development in unproven territory. The spacing rule is not in any proper sense a prevention of or restriction upon drilling. It is merely one of a number of regulations to which all engaged in oil development must conform. To apply the amendment to the spacing rule would make it possible by dividing up leases into small tracts in advance of drilling to circumvent the rule entirely in subsequently proven territory. It is not believed that the amendment manifests any such legislative intent.

The appeal involves one other point. Appellees seek to uphold the trial court's judgment upon the ground that the title to the half acre tract was in dispute, and the Commission therefore was without jurisdiction to determine the right to the permit. We hold that the issue of bona fide dispute over the title was not raised by the evidence. The pertinent facts follow:

The following finding of the trial court is supported by uncontradicted evidence: "At some time prior to November 14, 1929, Claude D. Ashby and Lessie Ashby acquired title by adverse possession to the .5-acre tract of land involved in this case; that at the time title was so acquired to said .5-acre tract of land by adverse possession, Claude D. Ashby and wife Lessie Ashby owned title to a tract of approximately 105 acres of land adjoining and lying immediately east of the .5-acre tract of land involved in this case, and said .5-acre tract and said tract of approximately 105 acres had for many years prior to November 14, 1929, been enclosed under one fence and occupied by said Claude D. Ashby and wife Lessie Ashby as one body of land."

The claim of bona fide dispute as to title is predicated upon the fact that the .5-acre tract was embraced in the field note calls of the lease owned by appellee Shell Petroleum Corporation, and the fact finding of·the trial court to the effect that the Shell "makes a bona fide claim of title" to the oil estate in the .5-acre "under the three-year statute of limitation as against" Ashley and wife and their assignees, and that such claim of title was made known to the Commission upon the hearing of the application for the permit. There was no showing of any character of possession of the .5-acre in Shell or its predecessors in title which would defeat the limitation title of Ashley and wife. The .5-acre was fenced off from the other portions ·of the Shell lease, and there was no evidence of any possession of that tract adverse to Ashley and wife.

The trial court's judgment is reversed and judgment is rendered for appellants.

Reversed and rendered.

All concur in the decision.

BAUGH, J., also concurs in the construction in the opinion of the quoted amendment to Art. 6014a.

BLAIR, J., does not concur in the opinion's construction of the quoted amendment to Art. 6014a, but adheres to the views expressed in his opinion in No. 8613, above, rehearing in which is this day overruled.

On Appellees' Motion for Rehearing.

McCLENDON, Chief Justice.

The question of title to the tract of land, permit to drill upon which ·is involved in this suit, was not put in issue in the trial court or in this court. Consequently our judgment and opinion cannot be construed as an adjudication of title. The only issue involved was the validity of the Commission's order. We make this statement because of appellees' apprehension, expressed in the motion, as to the possible effect of our opinion and judgment in any litigation which may arise between the parties to this suit over the title to said tract.

With this explanation, the motion is overruled.

Overruled.