

# THE ATTORNEY GENERAL

## OF TEXAS

PRICE DANIEL
ATTORNEY GENERAL

AUSTIN, TEXAS

August 13, 1949

Hon. Wm. J. Murray, Chairman
Railroad Commission of Texas
Austin, Texas

Opinion No. V-881

Re: The applicability
of the Voluntary
Subdivision Rule
to the Submitted
Facts.

Dear Commissioner Murray:

Your letter requesting the opinion of the Attorney General on the above subject reads, in part, as follows:

"As Chairman of the Railroad Commission of Texas, I respectfully request an opinion from your Department that will enable the Railroad Commission to determine whether or not two tracts of land in the Gottschalt field, Goliad County, Texas, constitute voluntary subdivisions of property within the purview of that part of the Commission's spacing rule (usually referred to as Rule 37) which requires the Commission to ignore such subdivisions when acting upon applications to drill wells as exceptions to the spacing rule. This request is occasioned by the application of Beulah Hinchliffe for special permit to drill Well No. 1-A on the Alice Luedicke lease containing .06 acre of land out of the Weesatche townsite, A. Berry Survey, Gottschalt Field, Goliad County, Texas (Rule 37, Case No. 37,559) and by the application of Beulah Hinchliffe for special permit to drill Well No. 1-B on the Alice Luedicke lease containing .11 acre of land out of the Weesatche townsite, A. Berry Survey, Gottschalt Field, Goliad County, Texas (Rule 37 Case No. 37,560). The facts are these:

"One of the tracts of land in question, referred to in the record as the 'saloon tract' of .06 acre, has been a separate tract since January 31, 1934, when C. C. Luedicke and wife, who owned a tract of approximately 45.25 feet in width, conveyed the east 23.25 feet of such tract to O. G. and Herman Luedicke. Insofar as the record made before the Commission shows, the conveyance was made in order that O. G. and Herman Luedicke might own the saloon or tavern located on the east 23.25 feet.

"Through mesne conveyances, title to the 23.25 foot strip became vested in Calvin Luedicke on November 17, 1944. Testimony before the Commission was that Calvin Luedicke purchased the strip in order that he might own and operate the saloon or tavern located thereon.

"On March 13, 1948, Mrs. Alice Luedicke, widow of Calvin Luedicke, executed an oil and gas lease covering the 23.25 foot tract. This oil and gas lease is now owned by Beulah Hinchliffe. Insofar as the record made before the Commission shows, this is the first and only lease executed on this tract.

"The other tract of land in question, referred to in the record as the 'slaughter-house tract' of .11 acre, has constituted a separate parcel of land since January 8, 1946, when Calvin Luedicke and wife, who then owned a two acre tract, conveyed all of said two acres to Willie C. Lude except a tract of 80 feet by 60 feet upon which a slaughterhouse has been operated for many years. It is this tract of 80 feet by 60 feet that constitutes the .11 acre tract known as the slaughter-house tract.

"In so far as the record made before the Railroad Commission shows, Willie C. Lude purchased all of the two acre tract except the .11 acre reserved by Calvin Luedicke and wife in order that Willie C. Lude and his family might live in the house on the purchased tract while the children were going

to school in the town of Weesatche. In so
far as the record made before the Railroad
Commission shows, Calvin Luedicke and wife
reserved the .11 acre because they desired
to continue to own and operate the slaughter-
house located thereon.

"On March 13, 1948, Mrs. Alice Luedicke,
wife of Calvin Luedicke, executed an oil and
gas lease covering the .11 acre tract. This
oil and gas lease is now owned by Beulah
Hinchliffe. In so far as the record made
before the Railroad Commission shows, the
.11 acre tract was never under oil and gas
lease until Mrs. Alice Luedicke executed the
lease just referred to.

"Oil was discovered in the Gottschalt
Field on May 13, 1948. In 1930, some 18
years before, oil was discovered in the Slick
Field located more than four miles west of
the Gottschalt Field. The Slick Field is an
entirely separate and distinct field from
the Gottschalt Field.

"The Slick Field is the only field of
any consequence located anywhere near the
Gottschalt Field. Four isolated wells have
been drilled at points 2-1/4 miles to 3-1/2
miles from the Gottschalt Field but these
wells either failed to produce oil or failed
to lead to the discovery of an oil field con-
taining more than one oil well. None of such
wells were drilled in the Gottschalt Field.

"....

"(1) Should determination of the issue
of voluntary subdivision be determined by
reference to whether or not at the time of
the fee transaction the tracts in question
were reasonably thought to be productive of
oil or gas?

"(2) Should determination of the issue
of voluntary subdivision be made by reference
to the date of discovery of oil in the oil
field in which the tracts in question are lo-
cated?

"(3) Should determination of the issue of voluntary subdivision be made by reference to the date of discovery of oil in the area or territory in which the tracts in question are located?

"(4) If question No. 3 should be answered in the affirmative, then what constitutes the 'area' or 'territory'?

"(5) If question No. 3 should be answered in the affirmative, then, under the facts of this case, would the tracts in question be voluntary subdivisions?"

Your first question seeks advice on whether the Commission should consider evidence showing a purpose or connivance to circumvent Rule 37. This is manifest from the language "reasonably thought to be productive of oil and gas." If the conveyance by fee was made at a time when the land was reasonably thought to be, or anticipated to be, productive of oil and gas, that would be some evidence that the owner segregated the land in order to circumvent Rule 37. However, such fact would not be conclusive that the owner purposely intended to avoid the rule. Our conclusion is that if there is substantial evidence showing a purpose or connivance to avoid the rule, no exception to Rule 37 should be allowed to prevent confiscation. Railroad Comm. v. Magnolia Petroleum Co., 130 Tex. 484, 109 S.W.2d 967 (1937).

The rule stated in Humble Oil and Refining Co. v. Railroad Commission, 68 S.W.2d 625 (Tex. Civ. App., 1933, error dism.), was quoted with approval in the Magnolia Case, supra, as follows:

"It is manifest, therefore, that, where a situation which would circumvent the rule is created by voluntary act, acquiescence, or connivance of the parties after the rule has attached to the property, such situation cannot be asserted as a valid ground for exception to the rule. The parties, in that event, are relegated to their rights as they existed prior to the creation of such situation."

Your second, third, and fourth questions are so related that we shall discuss them together. The question of the consideration of the date of the discovery

of oil or gas has been before our courts on several different occasions.

In Nash v. Shell Petroleum Corp., 120 S.W.2d 522, (Tex. Civ. App., 1938, error dism.), the question was directly before the court as to whether the voluntary subdivision rule applied to a subdivision made subsequent to the promulgation of the original spacing rule in 1919. The facts in that case were that the tract was conveyed "about a year before the discovery of oil in the East Texas Field." In holding that the subdivision rule did not apply, the court stated:

> "Rule 37 as originally passed provided for exceptions 'to protect vested rights'.... The quoted wording has been changed to read 'to prevent confiscation of property'.... We conclude that the two expressions were used synonymously.... One of the main purposes of this exception was to protect the vested right of capture of owners of tracts so small or of such irregular shape as to preclude development under the general rule.... Having made the exception, we have reached the conclusion that it did not have the power to limit it to subdivisions antidating the rule....

> "The voluntary subdivision rule, created by court construction, was essential to the preservation of the spacing rule and the stated exception. Without it the spacing rule would have been unenforceable as to anyone who desired to circumvent it. Its basis, and only basis, is to prevent circumvention and thereby to preserve and make effectual the spacing rule. The several applications of the voluntary subdivision rule have been predicated upon this basis -- prevention of circumvention of the spacing rule.... In no case, where the question was expressly raised, has it been judicially determined that the voluntary subdivision rule has been applied on the sole ground that the subdivision post-dated the original promulgation of Rule 37. That rule as originally promulgated did not expressly so provide, nor do we believe its necessary implication calls for such construction. To so construe it would, as we have already stated, be unreasonable."

In Brown v. Humble Oil and Refining Co., 126 Tex. 296, 83 S.W.2d 935 (1935), the Supreme Court held that the subdivision rule is applicable to subdivisions "where Rule 37 is in force in a certain territory." This would indicate by implication that Rule 37 did not apply to certain other territory, presumably that which is not a proven oil field. This is further discussed on page 8 hereof.

In Shell Petroleum Corp. v. Railroad Commission, 116 S.W.2d 439 (Tex. Civ. App., 1938, error dism.), there was a subdivision (a partition among heirs) after 1919, but before the discovery of oil. The court, in holding that the permit be granted, wrote:

"The undisputed evidence showed that at the time of the ... partition ..., the territory surrounding the land partitioned was not known nor anticipated to be productive of oil or gas....

"Neither rule 37 of the so-called state-wide application as promulgated by the Railroad Commission in 1919, nor any amendment thereto, nor any special rule 37 has any application to territory not known nor anticipated to be productive of oil or gas; and the rule inhibiting voluntary subdivision of lands which could have been developed as a whole in order to circumvent the provisions of rule 37 has no application to subdivisions of lands prior to the discovery of oil and gas in the territory where the lands are located...." (Underscoring is added throughout this opinion.)

The latest case bearing upon this question is Wencker v. Railroad Commission of Texas, 149 S.W.2d 1009, (Tex. Civ. App., 1941). In that case there was a subdivision of a small tract after 1919 but before the discovery of oil. The Railroad Commission denied a permit on the small tract. The court held that the Commission erred, and that the applicant was entitled to the permit. The first question before the court was:

"1. Did the segregation of the 7.8-acre Slaughter tract from the Slaughter 1-acre tract, by warranty deed conveying the fee title to the State for highway purposes in

1933, nearly eight years prior to the dis-
covery of oil or gas in the Hawkins field,
constitute a voluntary segregation in viola-
tion of the State-wide Rule 37 then appli-
cable to the area?"

The court held:

"It is not controverted that the State
acquired the fee title to the approximately
5-1/2-acre tract for highway purposes in 1933,
nearly eight years prior to the discovery of
oil in that area or territory. Nor is there
any contention that the sale of the land for
highway purposes was made in order to circum-
vent the provisions of any oil well spacing
rule then in existence. In consequence, Ques-
tion '1' must be answered in the negative
under the several decisions holding that the
'voluntary subdivision' rule as announced by
the Courts and as later promulgated by the
Commission by its rule of May 29, 1934, is
not applicable where a tract of land is sub-
divided by mere fee conveyance from a larger
tract prior to the discovery of oil in the
area or territory where the land is situat-
ed."

Based upon the above decisions, it is our opin-
ion that the voluntary subdivision rule has no applica-
tion to subdivisions of land by fee title conveyances for
purposes other than development for oil and gas prior to
the discovery of oil or gas in the "oil field," "area,"
or "territory" where the lands are located.

Particularly concerning your third question, we
conclude that while the courts have used the words "area"
or "territory" we believe it evident that they mean an
"area" or "territory" "proven to be productive of oil or
gas." The words are not words of art and have no signi-
ficance except in connection with what they are used. In
this instance they were used in connection with the issue
of applicability of the voluntary subdivision rule whose
purpose is to prevent circumvention of the spacing rule.
The purpose of the spacing rule is to prevent waste of
oil and gas. Accordingly, "area" or "territory" when so
used must mean an "area" or "territory" productive of oil
or gas. The words are not capable of exact definition.
They are relative and will depend on the facts and cir-
cumstances of individual cases. In that regard, the

courts have uniformly held that the Commission is to pass upon issues of fact.

In Brown v. Humble Oil & Refining Co., 126 Tex. 296, 83 S.W.2d 935 (1935), previously discussed, the Court held that the rule against subdivisions applies "where rule 37 is in force in a certain territory." As used, the words "certain territory" could only mean a territory productive of oil or gas. In Shell Petroleum Corporation v. Railroad Commission, it was held the subdivision rule was not applicable "prior to the discovery of oil and gas in the territory where the lands are located."

Writing on the Motion for Rehearing in the Shell Case above, Justice Baugh stated that he agreed that the subdivision rule "should not and does not apply to instances where one in good faith acquires fee title to land in unproven territory." It is common knowledge that an "area" or "territory" is proven to be productive of oil or gas only by the bringing-in of a discovery well. What territory is "proven" and which is "reasonably productive of oil or gas" is a question of fact depending on the circumstances of each case.

It may be argued that certain language in Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 131 S.W. 2d 73 (1939), lays down the proposition that no subdivision of land made subsequent to 1919 can be considered under any circumstances in granting an exception to Rule 37 to prevent confiscation. We would not be in accord with that argument. In that case the Commission granted a permit to drill a well on a 2.35-acre tract which had been segregated from a 6.88-acre tract. The segregation was made after the discovery of oil in East Texas where the land was located. The Commission granted the permit as an exception to the rule on the ground that it would prevent the confiscation of property. The Supreme Court said:

"An examination of the order or rule of May 29, 1934, hereinafter referred to as the rule of May 29th, will show that subdivisions of land, as such, which have or hereafter may come into existence after rule 37 became effective, are not protected at all against confiscation. When rule 37 and the rule of May 29th are read together, it is evident that exception permits may be issued to protect such tracts from waste; but such exception

permits cannot be issued to protect such tracts, as such, from confiscation."

The court then quoted a section from the rule of May 29th and said: "To our minds, language could not be made plainer, or more all-inclusive." Following that statement, the court said on page 83 of the opinion:

"Under such a record, there is no possible escape from the conclusion that, as a matter of law, the Commission violated its rule of May 29th in granting this well permit to prevent a confiscation of property. As already shown, this permit is on a tract of 2.35 acres of land. This 2.35 acre tract was constituted a subdivision after Rule 37 became effective in this oil field, and as to this land."

It is significant to note also that the court cited with approval the rule which we have quoted heretofore from Railroad Commission v. Magnolia Pet. Co., supra.

After a careful examination and study of the Gulf Land Company case, we are convinced that the rules of law therein announced were applicable to the facts then before the court (subdivision after discovery of oil) and do not conflict with the rule which we have cited from the cases of Shell Pet. Corp. v. Railroad Commission; Nash v. Shell Pet. Corp.; Shell Pet. Corp. v. Railroad Commission of Texas; and Wencker v. Railroad Commission of Texas. The Wencker case was decided after the decision in the Gulf Land Company case. The Wencker decision, by citing the three previous Court of Civil Appeals decisions in all of which writ of error was dismissed, drew into line authority for the rule that where a tract of land is subdivided for purposes other than the development of oil and gas prior to the discovery of oil in the area or territory where the lands are located, such situation does not create a violation of Rule 37 so as to prevent the granting of a permit to prevent confiscation.

The facts in the Gulf Land case and the facts in all four of the Court of Civil Appeals cases cited are different. In the Gulf Land case, the 2.35 acre tract was subdivided after oil was discovered and after Rule 37 became effective as to that field and as to that land. In the other cases the subdivisions were made prior to the discovery of oil. This fact difference clearly distinguishes the cases. The Gulf Land case did not have

any of the questions presented in those four cases or by your questions. Consequently, the rules announced in that case should not be interpreted as laying down such an inflexible rule that any subdivision made subsequent to 1919 is an absolute bar to the granting of an exception to Rule 37 to prevent confiscation. To do so, we believe, would place an unreasonable construction upon that opinion and would also be out of harmony with the language used by Mr. Justice Sharp in the case of Brown v. Humble Oil and Refining Company, 126 Tex. 296, 83 S.W.2d 935 (1935), wherein it was said at page 945:

> "No inflexible rule can be announced, but if an exception be necessary to meet the ends of justice, the application for such a permit is to be addressed to the commission, whose orders are subject to review by the courts."

Your fifth question asks whether "under the facts of this case, would the tracts in question be voluntary subdivisions?" We feel that this question presents a question of fact which should be determined by the Commission. Consequently, we do not pass upon this question. As stated in Brown v. Humble Oil and Refining Co., supra: "All questions of fact are primarily for the Commission to determine."

## SUMMARY

1. In determining the issue of voluntary subdivision, the Railroad Commission should consider whether or not at the time of the fee transaction the tracts in question were in proven territory or in an area reasonably thought to be productive of oil and gas. If the tracts in question were reasonably thought to be productive of oil or gas, that would be evidence, though not conclusive evidence, of a purpose, acquiescence, or connivance to circumvent rule 37. And if such ultimate fact is supported by substantial evidence, then a denial of the permit should be upheld. Railroad Commission v. Magnolia Petroleum Co., 130 Tex. 484, 109 S.W.2d 967 (1937).

2. The voluntary subdivision rule does not apply where tracts of land are segregated

by fee title conveyance for purposes other than the development of oil or gas, provided that at the time of such segregation the land was not located in a proven oil or gas field. Wencker v. Railroad Commission of Texas, 149 S.W.2d 1009 (Tex. Civ. App., 1941); Nash v. Shell Petroleum Corporation, 120 S.W.2d 522 (Tex. Civ. App., 1938, error dism.); Shell Petroleum Company v. Railroad Commission, 116 S.W.2d 439 (Tex. Civ. App., 1938, error dism.); Shell Petroleum Company v. Railroad Commission, 120 S.W.2d 256 (Tex. Civ. App., 1938, error dism.).

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Charles E. Crenshaw
Assistant

Durward M. Goolsby
Assistant

CEC:db

APPROVED:

FIRST ASSISTANT ATTORNEY GENERAL