BROWN et al. v. HITCHCOCK et al.

BROWN et al. v. WALLACE et al.

Nos. 9914, 9915.

Court of Civil Appeals of Texas. Austin.

Dec. 6, 1950.

Rehearing Denied Jan. 10, 1951.

Powell, Wirtz & Rauhut, by A. J. Wirtz and J. A. Rauhut, of Austin, for appellant.

Price Daniel, Atty. Gen., and Durwood M. Goolsby and Charles E. Crenshaw, Asst. Attys. Gen., for Railroad Commission.

Wallace H. Scott, Jr., of Austin, for John H. Cochran, C. M. Hitchcock, and L. A. Wallace.

Ralph W. Yarborough, of Austin, for Mrs. I. M. Lemon, trustee.

GRAY, Justice.

These are Rule 37 cases and involve an application of the state-wide spacing rule to fee subdivisions made after the discovery of oil in the Garza field in Garza County. They are companion cases and were briefed and argued as such. The points here presented in the two causes are identical, the evidence, in all material respects, is the same, and for those reasons we have considered the two causes together and here dispose of each by this one opinion.

The permits here involved are: Cochran and Hitchcock permit to drill No. 1, Peter Gerner—being cause No. 9914—and Cochran and Wallace permit to drill No. 1, W. R. McGuire—being cause No. 9915. These permits were granted July 18, 1949, as exceptions to the general spacing rule "to prevent confiscation of property and/or to prevent waste." Upon the trial, by stipulation of the parties, the issue of waste was eliminated, and the trial court upheld the permits.

The history of the subdivisions by which the Gerner and the McGuire tracts are identified is traced by several deeds substantially as follows: H. D. Moreman acquired a tract of 7.65 acres of land on September 17, 1921, and thereafter on January 15, 1925, acquired a 7.3-acre tract adjoining the 7.65-acre tract. This total acreage adjoins the city of Post on the north. In 1932 Moreman conveyed to the State, for highway purposes, approximately 2.5 acres of land, and, also, a strip, for a drainage ditch, 20 feet wide and 300 feet long,—this conveyance divided the 15-acre tract and left a tract of approximately 4 acres east of the highway and north of the ditch, which 4-acre tract was less than 300 feet wide. On September 13, 1938, Moreman conveyed 2½ acres of the 4-acre tract to L. M. Williams, and the balance on March 11, 1940. L. M. Williams sold 1.13 acres of the 2½-acre tract to W. B. Williams on May 22, 1939,—the area so conveyed was approximately 210 feet wide and 234 feet long. On March 12, 1940, L. M. Williams sold his remaining area to Allen Bird, who subdivided the tract into four tracts, or lots, and on November 12, 1943, Bird sold one tract, or lot, to Peter Gerner, and on June 4, 1945, sold the McGuire lot.

Appellants are the owners of oil and gas leases on lands adjacent to the original Moreman 15-acre tract and in close proximity to the lots here involved. Mrs. I. M. Lemon, trustee, the owner of oil and gas leases on lands, including the Peter Gerner and W. R. McGuire lots, intervened as a party defendant.

The discovery well in the Garza field was brought in in 1935, some three or four miles south from Post. There is evidence that from 1935 to 1943 there were dry holes drilled between the discovery well and the Gerner and McGuire lots, and that not until late 1945 has oil development spread

northward. Both the Gerner and McGuire lots were purchased by the parties for homes, and without consideration for possible oil and gas development. At the times of the purchases the nearest oil production was some three and one-half miles away—the Garza field was generally considered to be limited to that area—and these lots and the area surrounding them were not considered valuable as oil lands. The lots were improved, Gerner paid $3,000 for his lot and the improvements, and McGuire paid $1,250 for his house and lot. They moved on the lots and still reside there. It was some four years after McGuire purchased his lot before leasing of the land was discussed, and it was 1949 before there was any mention of development of this land for oil and gas. There was further evidence that the area north of Post was strictly "unproven" and was completely "wild cat" territory, in so far as oil and gas development was concerned.

For the years 1935 to 1943 production in the field declined; in 1944 there were five wells producing 10,528 barrels of oil, but after that time the field developed and spread northward past the city of Post.

The Railroad Commission has not adopted any special rules for the Garza field.

Appellants complain that the trial court erred in upholding the permits because the proof shows that the tracts of land on which they were granted are subdivisions made in disregard of the existing spacing rule after discovery of the field.

At the time the Gerner and the McGuire lots were carved out of the Allen Bird purchase and at the times of the respective sales of the lots (11-12-43 and 6-4-45) the Garza field had been discovered but the evidence by no means indicates that the productive area of the field was considered to include these lots. On the contrary the evidence shows this area was considered "wild cat" and "unproven." There was no activity in the area north of Post and no consideration was given to oil production, at the time, by the purchasers of the lots. It was after the purchase that oil activity spread to the area north of Post.

The very purpose and object of the rules of the Railroad Commission under consideration here is the conservation of oil and gas, which includes regulation of the right of its capture. Until an area is brought under the jurisdiction of the Commission because of oil or gas activity in the area, there is no occasion to apply its rules, and until such time the Commission is not concerned with fee subdivision of land made without consideration for, or in anticipation of, oil or gas development. The rule (37a) itself provides for exceptions when necessary to prevent waste or confiscation of property. Indeed, if such exceptions were not recognized and permits to drill granted on tracts of smaller dimensions than set out in the rule proper, then confiscation of property would inevitably result to owners of small tracts because of drainage.

The question here presented has been involved in prior decisions of this court. In Shell Petroleum Corp. v. Railroad Commission, Tex.Civ.App., 116 S.W.2d 439, 441, Er.Dis., this court sustained a permit to drill on a .53 acre tract of land when the evidence showed that, at the time of the partition of the land, the territory surrounding the .53 acre tract was "not known nor anticipated to be productive of oil or gas." There this court said: "Neither rule 37 of the so-called state-wide application as promulgated by the Railroad Commission in 1919, nor any amendment thereto, nor any special rule 37 has any application to territory not known nor anticipated to be productive of oil or gas; and the rule inhibiting voluntary subdivision of lands which could have been developed as a whole in order to circumvent the provisions of rule 37 has no application to subdivisions of lands prior to the discovery of oil and gas in the territory where the lands are located."

To this same effect is the holding of this court in Nash v. Shell Petroleum Corp., Tex.Civ.App., 120 S.W.2d 522, Er.Dis.; Shell Petroleum Corp. v. Railroad Commission of Texas, Tex.Civ.App., 120 S.W.2d 526, Er.Dis., and Wencker v. Railroad Commission, Tex.Civ.App., 149 S.W.2d 1009.

Appellants say that, because the discovery well in the Garza field was brought in

prior to the fee subdivisions under consideration, the state-wide spacing rule had attached to the area including these lots, and for which reason the permits cannot be sustained. We think the facts refute the argument. If any attempt should be made to either define or outline the boundaries of the Garza field (short of the boundaries of the State or of other proven fields in the State) at the time of these subdivisions, then we think due consideration must be given to drilling operations, oil and gas development, the leasing of land for these purposes, and existing anticipation of such activities in the proven territory of the field or in reasonably close proximity thereto. Otherwise, there would be no reason for the rule to provide for exceptions. Nash v. Shell Petroleum Corp., supra. None of the enumerated conditions were applicable to the area in which the Gerner and McGuire lots are located at the time of the subdivisions, or at the dates of purchase of the lots.

For the reasons stated it is our opinion that, at the dates of the subdivisions in question, the rules of the Railroad Commission had not attached to the area where the Gerner and McGuire lots are located, and that the permits were properly sustained.

The judgment of the trial court is affirmed.

Affirmed.