**SOHIO PETROLEUM COMPANY,**
Appellant,

v.

**R. J. SCHUMACHER et al., Appellees.**

**No. 11774.**

Court of Civil Appeals of Texas,
Austin.

Nov. 4, 1970.

McGinnis, Lochridge, Kilgore, Byfield, Hunter & Wilson, Frank Douglass, B. D. St. Clair, Austin, for appellant.

Crawford C. Martin, Atty. Gen., Nola White, First Asst. Atty. Gen., Alfred Walker, Executive Asst. Atty. Gen., Houghton Brownlee, Jr., Linward Shivers, Rex H. White, Jr., Asst. Attys. Gen., Austin; Stayton, Maloney, Black, Hearne & Babb, John W. Stayton, Austin, for appellees.

PHILLIPS, Chief Justice.

This is a Rule 37 case. The Railroad Commission granted appellee Schumacher a permit to drill a well on a 2.668 acre voluntary subdivision of a reconstructed 17.8 acre tract in the East Hamlin Field, Jones County, Texas, as an exception to Rule 37.

Sohio Petroleum Company filed suit to set aside the Commission order granting the

permit. The district court entered judgment in favor of appellee and permittee Schumacher, hence this appeal.

We affirm the judgment of the trial court.

Appellant is before us on three points of error, briefed together, which are the error of the trial court in failing to set aside the Rule 37 permit for a well on the 2.668 acre portion of the 17.8 acre reconstructed tract because there is no substantial evidence that the permitted well is necessary to prevent confiscation to the owners of the reconstructed tract; because there is no substantial evidence that the permitted well is necessary to prevent confiscation to the owners of the 2.668 acre tract; because such well will result in confiscation to the other owners of the 17.8 acres and to the owners of the surrounding properties.

We overrule these points.

This case involves a portion of an abandoned highway approximately 70 feet wide and about 1¼ miles long extending across the East Hamlin Field. This strip containing 17.8 acres is composed of several smaller tracts, one of which is the 2.668 acre tract on which the Commission granted Schumacher the well permit in question.

It is undisputed that the 2.668 acre tract as well as the other tracts which go to make up the 17.8 acre tract are voluntary subdivisions. In 1925, prior to the discovery of the East Hamlin Field, fee title to a strip of land approximately 70 feet wide and several miles long was acquired by Jones County and was used for a highway right-of-way for many years. This highway strip was abandoned for highway purposes in the late 1950's when the highway was relocated and the 17.8 acres involved in this case consisted of a portion of that strip. In 1960, the State of Texas quitclaimed its interest in the strip to Jones County.

Meanwhile, the East Hamlin Field was discovered in 1950 and the field rules were adopted in July of that year.

In 1964, Jones County conveyed portions of the 17.8 acre strip to the "abutting and adjoining landowners" pursuant to Vernon's Ann.Tex.Rev.Civ.Stat. art. 1577. Out of the several tracts subdivided, appellee Schumacher in 1968, took an oil and gas lease purportedly covering the 2.668 acre portion from the heirs of Mary Neuman and a similar lease purporting to cover the 3.67 acre portion from the heirs of C. P. Anderson.

After acquiring leases covering the 2.668 acre tract and the 3.67 acre tract, Schumacher made application for a well on each of the tracts as exceptions to Rule 37. Sohio protested the applications. After a hearing, the Commission denied both applications.

Schumacher then applied for the well permit now under attack. This permit was applied for as a first well on the 17.8 acre highway strip to be located on the 2.668 acre Neuman Estate lease 35 feet and 100 feet from Sohio's offset leases. Again Sohio protested the granting of this application.

By order dated October 15, 1969, the Commission granted Schumacher a permit to drill a well on the 2.668 acre subdivided portion of the basic or reconstructed 17.8 acre highway strip as an exception to Rule 37. Although the order granting the exception permit states that the exception was granted to prevent confiscation and/or to prevent physical waste, the parties are in agreement that prevention of physical waste was not an issue before the Commission and is not a basis for the permit.

█ After the discovery of the East Hamlin Oil Field the State, as a matter of law, had a right to drill a well on the strip if the State had so desired. The strip had been conveyed to the County for the benefit of the State long prior to the discovery of oil in the field; and the conveyance was of the fee title. Consequently, no subdivision of property within the meaning of the subdivision rule occurred and the

State had a vested right to drill at least one well on the strip. Shell Petroleum Corporation v. Railroad Commission, 116 S.W.2d 439 (Tex.Civ.App., Austin, 1938, writ dism'd); Nash v. Shell Petroleum Corporation, 120 S.W.2d 522 (Tex.Civ.App., Austin, 1938, writ dism'd).

Through quitclaim by the State to Jones County, and through conveyances of the tracts in question, the vested right to drill a well on the strip is now in Schumacher. He seeks to avail himself of such vested right by drilling a *first* well on the strip as reconstituted under the rule announced in the *Century* case, Railroad Commission of Texas v. Magnolia Petroleum Company, 130 Tex. 484, 109 S.W.2d 967 (1937).

■ Our conception of appellant's position here is that the initial subdivision of the 17.8 acre tract is in derogation of Rule 37; however, appellant further contends that the *Century* rule, if applicable here, has been modified and subjected to the exception announced by the Supreme Court in Railroad Commission v. Williams, 163 Tex. 370, 356 S.W.2d 131 (1961). Appellant argues that *Williams* states that if the owners of the basic tract as a whole are not being confiscated then no Rule 37 exception can be upheld on the basis of preventing confiscation to the owner of the drill-site tract alone. In support of this argument, appellant contends that the evidence discloses that when the entire tract is considered, when the voluntary subdivision lines are erased and the owners as a whole are considered, there is no confiscation. That owners with their existing wells offsetting the 17.8 acre strip as a whole will ultimately recover more oil per acre foot than will other owners in the field; that compared to the field average and to the non-strip owners, the owners of the reconstructed tract have both an allowable and production advantage on the basis of barrels per total acre feet owned; that the strip owners have an interest in seven of the nine wells immediately offsetting this lease; that while the two wells in which

they have no interest may produce some of the oil from beneath a portion of the strip, this is more than offset by the production from the strip owner's wells which will ultimately benefit from the drainage to their wells from the non-strip owner's land; that this advantage in production is further reflected in the value of the oil produced per well by the strip owners as compared to the non-strip owners.

We hold that the rule announced in *Williams* has no application here. In *Williams*, Murel Williams was denied the right to drill a well on the 3.3 acre tract as reconstituted because he had acquired his undivided interest in the tract from his parents, the H. P. Williams; and because the parents, through the H. P. Williams No. 1 well located on their 37.5 acre tract immediately adjoining the 3.3 acre tract, were draining the gas from beneath the 3.3 acre tract. The Supreme Court held that since the H. P. Williams would not have been permitted to drill a well on the 3.3 acre tract to prevent confiscation of property, their grantee was in no better position. The Court said:

"If they [the H. P. Williams], as co-tenants with Smith Price of the 3.3-acre tract, had applied for a well permit for the tract prior to the conveyance to Murel and after the H. P. Williams No. 1 well had begun to drain the 3.3-acre tract, there would have been substantial evidence to support the denial by the Commission of the application. Murel, their grantee of the undivided one-half mineral interest, *could have no better rights to a well permit*. To hold otherwise would mean that a grantor of a mineral interest could create valuable oil development rights in his grantee which he himself did not have. This rule is a necessary corollary to the voluntary subdivision rule. That rule prohibits the creation of a right to a well permit on each small tract subdivided from a large one when the owner of the larger tract did not have such right." (356 S.W.2d 131, 137) Emphasis supplied.

Here, precisely, the contrary is true. After the discovery of oil in the East Hamlin Field, the State of Texas had the absolute right to drill a well on the strip even under the rule announced in *Williams,* as the State owned no other property abutting the strip. It was this right that was conveyed by the State when it quitclaimed the strip to Jones County and that was conveyed by Jones County when it conveyed the strip to those owning the surface estate in tracts of land to the south of the strip.

In *Williams* the Court was not concerned with the interest of Smith Price, the owner of the other half of hte reconstituted tract. Nowhere in the opinion is there any mention of what he was receiving or would receive by reason of such interest or by reason of his interest in other tracts or leases. The Court concerned itself solely with what the H. P. Williams, grantors of Murel Williams, were getting and would continue to get through their interest in the H. P. Williams No. 1 well on the 37.5 acre tract.

Appellant has cited a number of cases [1] such as Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 131 S.W.2d 73, 78 (1939) for the proposition that the right to an exception permit depends on whether confiscation was occurring with respect to the reconstructed tract as a whole. These cases are not applicable here as they dealt with subdivisions which were fully developed with at least one existing well at the time the exception permit was sought. In the case at bar there is no well on the acreage in question.

This case should be affirmed for several other reasons even should *Williams* be applicable. In the first place, bearing in mind that the Commission granted the permit to drill in the case at bar, the burden is upon the appellant to prove that the order is not supported by substantial evidence. While appellant offered evidence to the effect that each owner under

the strip owns adjacent acreage on which there are producing wells and argues that these strip owners with their existing wells will ultimately recover their fair share of the oil under the strip, the implied finding of the Commission is to the contrary. Substantial evidence supports this finding inasmuch as several of the offset wells are not of common ownership with those holding under the strip, thus allowing uncompensated drainage.

Secondly, there is an implied finding by the Commission that the Neuman heirs holding under the Schumacher 2.668 acre strip are entitled to drill and complete a well thereon to prevent confiscation to their property and this finding is supported by substantial evidence. While these heirs have an interest in the Matecha lease that adjoins the drill-site tract this lease is less densely drilled than any lease in the surrounding area and the evidence reflects that the Matecha lease will ultimately recover less oil per productive acre than for any adjacent lease. In addition, the interests owned by the Neuman heirs in the drill-site lease is greater than the interest they own in the offsetting Matecha lease. They own no further interest in any other tract in the field. Appellant's evidence to the effect that the Neuman heirs will be protected without a well on the drill-site because more oil will ultimately be produced from the Matecha lease than originally underlay the lease in recoverable quantities is not tenable because it ignores the structural position and the water drive in the East Hamlin Field which places the Matecha lease at a natural advantage. See this Court's opinion in Railroad Commission v. Magnolia Petroleum Co., 169 S.W. 2d 253 (Tex.Civ.App., Austin, 1943, error ref.).

The judgment of the trial court is affirmed.

Affirmed.

---

1. Railroad Commission of Texas v. Magnolia Petroleum Company, 130 Tex. 484, 109 S.W.2d 967 (1937) ; Humble Oil and Refining Co. v. Lasseter, 120 S.W.2d 541 (Tex.Civ.App., Austin, 1938, er. dism'd) among others.