**Mary Ann Campbell MUSICK, et al., Appellants,**

v.

**RAILROAD COMMISSION OF TEXAS, Appellee.**

No. 3–87–132–CV.

Court of Appeals of Texas, Austin.

Feb. 24, 1988.

Rehearing Denied April 13, 1988.

Ivan D. Hafley, Reynolds, Shannon, Miller, Blinn, White & Cook, Austin, for Mary Ann Campbell, W.V. Harlow, Jr. and Strick Watkins.

Jim Mattox, Atty. Gen., Robert L. Seibert, Asst. Atty. Gen., Austin, for R.R. Com'n of Texas.

Carroll Martin, Scott, Douglass & Luton, Austin, for Colorado Interstate Gas Co.

Before POWERS, BRADY and CARROLL, JJ.

POWERS, Justice.

The Texas Railroad Commission denied Mary Ann Campbell Musick's application for a permit to drill and complete a well in the Panhandle West Field, a natural-gas field in Moore County. She sued in district court for judicial review of the Commission's decision, joined by W.V. Harlow, Jr. and Strick Watkins who were entitled to a royalty in production from the proposed well. The district court declined to reverse the Commission's decision, a judgment we will affirm.[1]

### THE CONTROVERSY

Harlow and Watkins discovered in 1980 a vacancy tract comprising 8.064 acres. The tract is some 9,000 feet in length but ranges in width from 31.58 feet to 45.80 feet. Weymouth Corporation, the surface owner who had in good faith enclosed the 8.064 acres, exercised its statutory right to purchase the small tract from the State and received a patent. Tex.Nat.Res.Code Ann. §§ 51.171–.173 (1978). Weymouth Corporation subsequently leased the land to Musick for development of the minerals.

Musick applied to the Commission for a permit to drill the first well on the small tract, intending to complete it in the Panhandle West Field—a natural-gas field discovered in 1933 from which production is enjoyed through several wells surrounding the small tract. Harlow and Watkins joined in the Commission proceedings in support of Musick's application. Colorado Interstate Gas Company and Anadarko Production Company appeared in the agency proceedings in opposition to Musick's application.

The Commission's spacing rules prescribe 330 feet as the minimum distance between a well and the nearest property or lease line, allowing an exception when necessary to prevent waste or confiscation of property. Owing to the narrowness of Musick's tract, her application could be granted only on an exceptional basis because the distance from the proposed well to the north-south boundaries of her small tract is

1. Appellants are Mary Ann Campbell Musick, W.V. Harlow, Jr., and Strick Watkins. Appellees are the Texas Railroad Commission, Ana-
darko Production Company, and Colorado Interstate Gas Company.

only about 20 feet in either direction. She therefore proceeded in the Commission on a contention that she was entitled to an exception to prevent confiscation of her vested rights under the lease from Weymouth Corporation.

After notice and hearing, the Commission determined in its final order that Musick was not entitled to the exception because she had not shown that it was necessary to prevent confiscation of any rights she had acquired in the lease from Weymouth Corporation. The agency reasoned that each of Musick's predecessors in title and interest, first the State and then Weymouth Corporation, had in fact enjoyed during their respective periods of ownership a fair and reasonable chance to recover the natural gas in place under the small tract, it being undisputed in the case that each owned an interest in production from nearby wells that had drained from under the small tract all but 11,000 mcf of the natural gas previously in place there.[2] Consequently, Musick's claim of confiscation was precluded by the rule of law that one cannot acquire from his grantor a right to a well permit when the grantor himself had none. *Railroad Commission v. Williams*, 163 Tex. 370, 356 S.W.2d 131, 137 (1961). The Commission therefore denied Musick's application for a well permit.

**2.** While numerous surrounding wells evidently produce from the Panhandle West Field, the Commission's final order declares that only three wells drain from under the small tract leased by Musick. In the first such well, the State of Texas enjoys a one-eighth free royalty on production. Weymouth Corporation possesses a 33.33% working interest in the second well and a 1.0156% royalty interest in the third.

**3.** Musick's contention refers to the "voluntary subdivision rule," a common-law rule developed in the courts to prevent evasion and avoidance of the Commission's spacing rules. The rule holds that an applicant may not obtain a well permit, under the "confiscation" exception to the spacing rules, when those rules *applied to his tract at the time it was created* from a larger tract. We should discuss the rule briefly because it bears somewhat on the matters discussed in the text of our opinion.

The Commission's spacing rules have the purpose of preventing "waste" or the ill consequences, of various kinds, that result from too many wells producing from the same reservoir

Musick, Harlow, and Watkins sued in district court for judicial review of the Commission's final order. The Commission appeared in defense of its order as did Colorado Interstate Gas Company and Anadarko Production Company, intervenors, who own interests in wells producing from the Panhandle West Field under nearby tracts. The district court refused to reverse the Commission's final order and this appeal ensued.

## DISCUSSION AND HOLDINGS

Musick contends the *Williams* decision was not applicable to the present controversy, or was misapplied by the Commission, for several reasons that we shall now consider.

Musick contends the *Williams* decision is not applicable to the case because the State's conveyance to Weymouth Corporation was *involuntary* in the sense that the State was *compelled* to sell and convey the small tract to Weymouth Corporation once it had complied with the statutory provisions giving it the right to purchase the small tract.[3] *See* Tex.Nat.Res.Code, *supra*, § 51.171 *et seq.* This theory is highly doubtful. Nothing "compelled" the

of oil or gas. They are one expression of the State's interest in conserving its natural resources. But the spacing rules plainly encroach upon and may negate entirely an owner's property rights—specifically his right to capture what he may of the oil and gas that may be in place under his tract or that may migrate there from under nearby tracts. And if an owner may not produce from under his own tract, the oil and gas in place there might migrate to an adjoining tract to be captured by others. Thus the spacing rules raised an obvious issue of whether their effect unconstitutionally deprived the owner of property without compensation. To meet this constitutional objection, the spacing rules have always allowed for exceptions to be granted by the Commission when necessary to protect vested rights. *See generally*, Hyder, *Some Difficulties in the Application of the Exceptions to the Spacing Rule in Texas*, 27 Tex.L.Rev. 481, 486 (1949). (The spacing rules have also allowed for exceptions to prevent "waste," or the justification for the rules themselves.)

The very provision in the rules for an exception to prevent the "confiscation" of vested rights in property posed a great temptation to a land-

Legislature to enact the statute giving those in the position of Weymouth Corporation a preferential right to purchase the property; the *Williams* "corollary" to the "voluntary subdivision rule" would be entirely redundant under such a theory: and, nothing in Musick's contention alters the fact that Musick derives her "vested rights" immediately from Weymouth Corporation and not the State. We shall,

owner to subdivide his tract into smaller parcels, so that each might support a claim by him or his grantor to the "confiscation" exception. Viewed another way, this possibility placed in private hands the power to frustrate entirely the force and effect of the Commission's spacing rules and thereby introduce the "waste" they were designed to prevent. The "voluntary subdivision rule" was developed in the courts to preclude this possibility. If applicable to the case, the rule denies the right to a well permit on the claim it is necessary to prevent "confiscation."

In *Sun Oil Company v. Railroad Commission,* 68 S.W.2d 609 (Tex.Civ.App.1933) *aff'd,* 126 Tex. 269, 84 S.W.2d 693 (1935), the Court of Civil Appeals set out the rationale of the "voluntary subdivision rule" one week before it was incorporated by reference in the more frequently cited case of *Humble Oil & Refining Co. v. Railroad Commission,* 68 S.W.2d 625 (Tex.Civ. App.1933) *aff'd sub nom. Brown v. Humble Oil & Refining Co.,* 126 Tex. 296, 83 S.W.2d 935 (1935), where the Supreme Court affirmed the Commission's power to make and enforce spacing rules in an exercise of the State's police power. In the *Sun Oil Company* opinion, Justice Baugh gave the following rationale for the "voluntary subdivision rule:" (1) all property is held and enjoyed subject to the State's police power; (2) the Commission's spacing rules have the force and effect of statutes enacted in an exercise of the State's police power; (3) contracts, whether by conveyance or by lease, are entered into and must be construed in reference to the spacing rules when those rules applied to the land in question; (4) "vested rights" may arise only in *conformity* with those rules and cannot grow out of their violation *or* evasion; (5) any asserted "right" to an exception to the spacing rules on the ground of confiscation or waste cannot, therefore, become a "vested right" if predicated upon a *contravention* of the spacing rules; and, (6) "[t]o hold otherwise would be to set at naught the conservation laws of the state." 68 S.W.2d at 611.

Notwithstanding the word "voluntary," the rule of law announced in *Sun Oil Company* may apply to a newly created tract of land even though "its creation was neither volitional nor intentional." Meyers, *"Common Ownership and Control" in Spacing Cases,* 31 Tex.L.Rev. 19, 20 (1952). The rule of law applies *a fortiori* when the new tract is created for the very purpose of circumventing the spacing rules. *Magnolia Petroleum Co. v. Railroad Commission,* 120 S.W.2d 548 (Tex.Civ.App.1938, writ dism'd). That mental state is not essential, however, as indicated in *Railroad Commission v. Magnolia Petroleum Co.,* 125 S.W.2d 398 (Tex.Civ.App.1939, writ ref'd). There, the court held the "voluntary subdivision rule" to be applicable where the small tract of .86 acres resulted from a statutory cause of action authorizing one joint owner of land or minerals to *compel* partition between all joint owners. In *Shell Oil Co. v. Railroad Commission,* 247 S.W.2d 448 (Tex.Civ.App.1952, writ ref'd), the court held a .64 acre tract to be within the "voluntary subdivision rule" even though the small tract had been created by a grantor's unintentional omission of the tract owing to his mistaken belief as to the location of his boundaries. These are consistent, of course, with the central idea of *Sun Oil Company* that vested rights must arise in conformity with the spacing rules, when they apply to the tract at the time of its creation, and not in contravention of those rules, for vested rights cannot grow out of any intended or unintended violation *or* any purposeful evasion of such rules.

Determining *whether* the spacing rules applied to a tract at the time of its creation and variations on that issue have been the subject of much litigation. *See* Meyers, *supra.* "Today, the Commission has specifically defined when rule 37 attaches by the language of the rule itself." Douglass & Whitworth, *Practice Before the Oil and Gas Division of the Railroad Commission of Texas,* 13 St. Mary's Law Journal 719, 729 (1982).

In the present controversy, the Commission determined in its final order that Musick's small tract was "not a voluntary subdivision." Hence, she is not precluded by the "voluntary subdivision rule" or as a *matter of law* from obtaining a well permit, provided she could show herself entitled to an exception to prevent "waste" or the "confiscation" of her "vested rights." She elected to establish only the latter ground for obtaining a well permit as an exception to the spacing rules. The Commission concluded in its final order that she did not establish confiscation owing to the rule of law stated in *Railroad Commission v. Williams,* 163 Tex. 370, 356 S.W.2d 131, 137 (1961) as a "corollary" to the "voluntary subdivision rule": one can have no better right to a well permit than his grantor had at the time the tract was created, for "[t]o hold otherwise would mean that a grantor of a mineral interest could create valuable oil development rights in his grantee which he himself did not have." The word "corollary" means, of course, simply an inference drawn from the *same basic principles* that underlie the "voluntary subdivision rule."

nevertheless, address the reasoning necessary to Musick's theory.

Musick assertedly derives her contention from the following passage in *Williams:*

Murel, [the] grantee of the undivided one-half mineral interest, could have no better rights to a well permit [than his grantors]. To hold otherwise would mean that a grantor of a mineral interest could create valuable oil development rights in his grantee which he himself did not have. *This rule is a necessary corollary to the voluntary subdivision rule.* That rule prohibits the creation of a right to a well permit on each small tract subdivided from a large one when the owner of the larger tract did not have such a right....

356 S.W.2d at 137 (emphasis added). Musick apparently argues from the unstated premise that the "corollary" can *only* apply when the "voluntary subdivision rule" also applies; and, that rule does not apply here because the Commission determined specifically that her small tract "was not a voluntary subdivision."

Nothing in *Williams* suggests Musick's premise and she offers no authority for it. Her premise is contradicted by *Williams* itself where the court, "without deciding" the issue, constructed an analysis that *assumed* the "voluntary subdivision rule" did *not* apply to the case because the 3.3–acre tract had been created as a separate tract, for oil and gas development purposes, *before* a 1958 judicial decree effectuated a voluntary subdivision under the applicant's theory. In fact, the Court *assumed* the applicant's grantors *could* have applied for a well permit as an exception grounded on confiscation (implying again the inapplicability of the "voluntary subdivision rule") but noted that the grantors could not have established confiscation because it was undisputed that they shared in production from another well that drained the 3.3–acre tract. Having thus *assumed* the "voluntary subdivision rule" was *not* applicable, the Court then held the case was controlled by the "corollary" that the applicant could

not have acquired a right to a well permit when his grantors had none. 356 S.W.2d 134, 135.

Musick's premise is also contradicted by the fundamental proposition that both the "voluntary subdivision rule" and the *Williams* "corollary" rest upon fundamental legal principles as set out in footnote 3: an owner holds and enjoys his property subject to the State's police power, as manifested in the Commission's rules promulgated under the conservation laws; vested rights may arise only in conformity with those rules, when they apply to the case, and not through their violation or evasion; to hold otherwise would negate the State's conservation laws. When those principles apply, they may apply through the "voluntary subdivision rule" *or* its *Williams* "corollary" as the circumstances make one or the other applicable. In either case, the principles control the result and not the circumstances alone.

■ Musick next advances several related arguments, all founded upon the undisputed proposition that the natural gas in place under the small tract has been drained to adjacent tracts where it has been produced through wells in which she herself has no interest. This proposition, in her view, establishes as a matter of law the "confiscation" of her vested rights under the Weymouth lease—unless she is now permitted a well on the tract to produce the 11,000 mcf that remains and, presumably, whatever additional quantities she may capture under an allowable set by the Commission.

In her first argument, Musick contends the *Williams* "corollary" does not apply because her predecessors in title (first the State then Weymouth Corporation) *did* have a right to a well permit in order to prevent confiscation. Consequently, she avers, this is *not* a case where she is claiming a right that her grantor did not have. The State had a right to a well permit, Musick contends, because the State "owned no other property abutting the" small tract. *Sohio Petroleum Company v.*

*Schumacher,* 460 S.W.2d 445, 449 (Tex.Civ. App.1970, no writ). We need not consider the meaning and effect of the *Schumacher* decision because we believe the Commission could properly conclude that Weymouth Corporation—Musick's immediate grantor—did not have a right to a well permit, to prevent confiscation, while *it* owned the small tract.

Musick contends that Weymouth Corporation did have such a right because none of the draining wells in which it had an interest were "entirely draining" natural gas in place under the small tract. She purportedly infers from *Williams* and *Benz–Stoddard v. Aluminum Company of America,* 368 S.W.2d 94 (Tex.1963) the expression "entirely draining." We find in neither of those opinions such an expression. More importantly, neither suggests directly or by implication that an owner does not have a reasonable opportunity to recover his fair share of production, through a well on a nearby tract, unless that well is "entirely draining" his tract. Musick's unsupported theory is, in our view, refuted by the "proper test of confiscation" stated in *Williams*—that is,

> whether an owner, with the wells which already exist, has been accorded a *fair and equal opportunity* with other producers of surrounding tracts within the drainage area to recover his *fair share* of the oil in place beneath his tract. If he has, no confiscation results.

356 S.W.2d at 136. (emphasis added). This "test" implies a consideration and orchestration of several variables and negates the idea of one *controlling* factor such as that suggested by Musick.

Musick's theory is also, in our view, contrary to the rule that the Commission must be allowed "some latitude" in such matters, owing to technical complexities and the varying factual and legal circumstances that may arise in administering the confiscation exception. *Railroad Commission v. Shell Oil Co.,* 139 Tex. 66, 161 S.W.2d 1022, 1027 (1942); *Gulf Land Co. v. Atlantic Refining Co.,* 134 Tex. 59, 131 S.W.2d

73, 85 (1939). The rule of law she suggests would be a straitjacket on the Commission's essential powers. We therefore reject the theory.

Musick contends next that she was entitled to the permit, in order to prevent confiscation of her vested rights under the Weymouth lease, *independently* of whether her predecessors in title were entitled to such a permit on that ground. She cites in support of this contention the decision in *Texaco, Inc. v. Railroad Commission of Texas,* 716 S.W.2d 138 (Tex.App.1986, writ ref'd n.r.e.), where a substandard tract such as her small tract was *not* involved. This argument amounts to no more than a veiled assault on the rule stated in *Williams:* one may not claim a right to a well permit on a substandard tract, as an exception to the spacing rules and on the ground of confiscation, when one's grantor did not have such a right. If the *Texaco* decision be so extended, it would be contrary to the *Williams* holding and the rule of *stare decisis* by which we are bound. We therefore reject Musick's contention.

The foregoing discussion has been directed at Musick's contentions regarding the applicability and application of the *Williams* decision. We now overrule each point of error wherein the contentions are made.

■ Musick raises another point of error that is unrelated to the *Williams* case. She complains the Commission's order is invalid because it does not contain necessary findings of fact; and, even had the necessary findings been set forth in the final order, they would not have been supported by substantial evidence.

We believe the final order does indeed set forth sufficient findings of fact and conclusions of law, demonstrating the basis of the agency's decision, for the various purposes that underlie the requirements of § 16(b), Tex.Rev.Civ.Stat.Ann. art. 6252–13a, Texas Administrative Procedure and Texas Register Act (APTRA) (Supp.1988). In any case, Musick contends in her brief

that "[t]he facts in this case are undisputed" and it appears that the other parties agree. We cannot, in consequence, conceive that Musick has been prejudiced by the omission of which she complains. We may not reverse the agency's final order absent such prejudice to the complaining party. APTRA § 19(a). We therefore overrule her point of error.

Finding no reversible error as assigned by Musick, we affirm the judgment of the district court.