## RAILROAD COMMISSION OF TEXAS ET AL. V. MAGNOLIA PETROLEUM COMPANY.

No. 7294.  Decided November 3, 1937.
Rehearing overruled January 12, 1938.
(109 S. W., 2d Series, 967.)

*William McCraw*, Attorney General, *Harry S. Pollard*, Assistant Attorney General, *Upchurch & Hooper*, and *Willis Gresham*, all of Austin, and *Truman Warren*, of Tyler, for plaintiffs in error.

Neither the oil and gas conservation laws of Texas nor rules and regulations of the Railroad Commission promulgated thereunder destroy or restrict the right of partition. These conservation statutes and regulations merely limit the right to use property for the purpose of oil and gas development in order to prevent or lessen the waste of these resources. Magnolia Pet. Co. v. Blankenship, 85 Fed. (2d) 553 (certiorari denied, 299 U. S. 608, 57 Sup. Ct. 319, 81 L. Ed. 505), and cases cited in the opinion.

*W. H. Francis* and *Walace Hawkins*, both of Dallas, and *Greenwood, Moody & Robertson*, of Austin, for defendants in error.

It was error to hold that the undisputed evidence was not sufficient to show that the order of the Railroad Commission granting a permit to drill the well approximately 25 feet from the south line of Century Refining Company strip was arbitrary and invalid even if the necessity of the recombined tracts be considered. Arkansas Fuel Oil Co. v. Reprimo Oil Co., 91 S. W. (2d) 381; Bluitt v. Pearson, 117 Texas 467, 7 S. W. (2d) 524; Texas Acceptance Corp. v. Strickland, 91 S. W. (2d) 1179; 33 Tex. Jur. 558.

*Robert E. Hardwicke*, of Fort Worth, *Saye & Saye, Wynne & Wynne, Hurst, Leake & Burke, Taylor & Storey, Carl W. Wade, H. P. Smead, Clyde H. Hall, Harrington & Harrington, Bramlette & Levy*, all of Longview, *Jones & Jones*, of Marshall, *Lasseter, Simpson, Spruiell & Lowry*, of Tyler, *Smith, Goldsmith, Adams & Bagby, Ben H. Powell* and *J. A. Rauhut*, all of Austin, *J. W. Hassell, George W. Hutchison, Chas. B. Ellard, Hamilton,*

*Harrell, Hamilton & Turner,* and *Turner, Rodgers & Winn,* all of Dallas, all filed briefs as amici curiae.

MR. JUDGE MARTIN of the Commission of Appeals delivered the opinion for the Court.

The Century Refining Company obtained a permit from the Railroad Commission of Texas to drill an oil well on a 1.6 acre tract of land as an exception to Rule 37. The Magnolia Petroleum Company brought suit in the District Court of Travis County to set aside such permit, and for an injunction. Judgment was entered denying it any relief. That judgment was reversed by the Court of Civil Appeals. See Magnolia Petroleum Co. v. Railroad Commission et .al., 105 S. W. (2d) 787, where the facts are fully stated.

W. B. Giles was the owner of a fee simple title to 41.7 acres of land leased to the Ward Oil Corporation at the time of this trial. He acquired title by limitation to an additional narrow strip of land aggregating 5.56 acres along the south and east boundaries of this 41.7 acre tract, which included the 1.6 acres involved here, and which is that part of said strip located along and adjacent to the south boundary line of the 41.7 acres above mentioned. This strip is fully shown by plat, in opinion of Court of Civil Appeals, supra. Giles was twice married. Seven children were born of the first and four children of the second marriage. The eleven children became the owners of the entire acreage above described, and by partition the limitation strip passed to the eleven Giles children, who executed an oil lease to the Century Refining Company upon the 1.6 acre strip along the south boundary line. These events transpired subsequent to the enactment of Rule 37. Considering the 41.7 acres and the limitation strip of 5.56 acres as it was before the partition, it is apparently conceded that such consolidated tract was entitled to more wells in order to give its owners a fair opportunity to secure the recoverable oil in place beneath it. It was shown that the density of drilling in said two tracts considered as one, was one well to 5.25 acres, while the Magnolia immediately to the south of it had a density of one well to 2.86 acres. Two sharply contested legal issues are presented by this record, viz.: (1) Could and did the trial court consider the situation of the parties as it was before the partition of this land by the Giles heirs, in determining the respective rights of the parties hereto; and (2) upon whom did the burden of proof rest in the trial court. An answer to these questions will determine the controlling and major points presented, though these are expressed in a number

of propositions, together with a multitude of other ancillary questions, many of which relate to a mythical case not before us.

A number of able amici curiae briefs are on file, and we acknowledge our indebtedness to the respective authors of these for much valuable assistance.

Without cataloguing the many contentions pressed upon us, we turn aside briefly to make a general reply to many of these, which we believe sufficiently indicates our views.

■ Three methods of enforcing our conservation laws with respect to oil by the Railroad Commission are noted in some of the briefs before us. They are: (1) spacing of wells, (2) pooling agreements and (3) proration as between adjoining owners. Assuming, without deciding, that full legal authority exists in such Commission to enforce either or all of such three methods, it seems plain that this Court would clearly usurp an administrative function to direct the use of either by that body. There is an obvious distinction between a holding that such body *may* perform a certain function, and one that it *must* do so. The former, as in Brown v. Humble Oil & Refining Co., 83 S. W. (2d) 935, amounts only to a judicial interpretation of its authority to act, while the latter amounts to a choice by this Court for that body, of the use of a particular method, when clearly, in the ordinary case, an administrative discretion has been lodged with that agency of government respecting such matter. The language of Judge BROWN in Railroad Commission v. Galveston Chamber of Commerce, 105 Texas 101, 145 S. W. 580, aptly states our view:

"It is not within the language nor the spirit of the law, which authorizes the courts to review the action of the Railroad Commission, that any court should investigate the methods adopted by the Commission in fixing its rates, nor the motives or purposes which prompted such action. The result and its effect upon the rights of railroads and shippers mark the limit of judicial inquiry."

Just here it is not inappropriate we think to make note of the fact that the increasingly frequent entrance and intrusion of governmental agencies into the field of private endeavor has produced an irritating problem for business and a complex and difficult one for modern courts. These agencies have not yet been completely assimilated into our system of government, and many theoretical rules are found by experience to be impractical, so that it has become progressively more difficult to lay down an

unbending rule. Constitutional lines have been anciently and plainly marked, for a simple commercial world, but the complexity of modern business, constantly under the shadow of governmental supervision, frequently presents a case within a twilight zone where these "ancient landmarks" of the law appear dimly. It would be an unenviable if not an impossible task to judicially delineate the precise boundary lines of the public's right to conserve and preserve its natural resources, and the private individual's right to own and enjoy the use of property. These difficult problems will be solved in the light of the facts of each case, rather than in terms of a general rule. That all the above have contributed to produce some confusion in the authorities is not surprising. We shall not attempt here to explain or harmonize these. Suffice it to say that if the exact point for decision in each case is kept separated from merely arguendo statements, the confusion will appear less real.

■ Again, the proceedings before the Railroad Commission are informal. Their validity will not be tested by the technical niceties of pleading and practice obtaining in court trials. The conditions as they existed when the Railroad Commission acted is the controlling inquiry before the district court in cases of this character, not what evidence was heard by the Commission, under technically correct pleading. Magnolia Petroleum Co. v. New Process Production Co., 129 Texas 617, 104 S. W. (2d) 1106.

■ Nor do we measure the validity of its order by the reason it gives for same. We review the final ruling of such Commission, based upon the evidence adduced at a judicial hearing as to the situation of the parties at the time of such ruling. The legal effect of the result of the hearing before said Commission upon the rights of the parties is the inquiry here. Much of this is said in an endeavor to make plain that this is a reviewing court only, and that it will not concern itself with matters affecting only the wisdom of methods employed by governmental agencies, nor with pure questions of governmental policy.

Returning now to a consideration of the specific questions in the case before us, we repeat verbatim the language of the majority opinion of the Court of Civil Appeals as illustrative of the basic reason controlling that court:

"Under the facts and circumstances above stated, the rules announced by this court in Humble Oil & Refining Company v. Railroad Commission, 68 S. W. (2d) 625, approved by the Supreme Court and repeatedly adhered to in subsequent decisions

unnecessary to cite here, and the amendment promulgated by the Commission itself on May 29, 1934, predicated upon these decisions, wherein it is provided that the Commission would not consider such subdivisions of property made subsequent to the promulgation of the original spacing rule on the question of confiscation of property, we conclude that the permit in question was not authorized and is therefore invalid. * * *

"Having reached the conclusion that the only support upon which the permit granted, under the undisputed facts, can rest, is that it was necessary to protect rights of the Century Refining Company in and to this 1.6-acre tract, considered separate and apart from adjacent leases; that the Railroad Commission granted it on the ground and for that purpose; and such strip being a voluntary subdivision, segregated in 1931 from a larger tract capable of development as a whole without the necessity of such exception; we conclude that no well was authorized thereon."

■ One of the rules stated in 68 S. W. (2d) referred to in said opinion is in the following language:

"It is manifest, therefore, that, where a situation which would circumvent the rule is created by voluntary act, acquiescence, or connivance of the parties after the rule has attached to the property, such situation can not be asserted as a valid ground for exception to the rule. The parties, in that event, are relegated to their rights as they existed prior to the creation of such situation." Humble Oil & Refining Co. v. Railroad Commission et al., 68 S. W. (2d) 625.

■ We agree to the correctness of this rule, but we think that court erred in this case in its application. Assuming, as the Court of Civil Appeals evidently did, but not deciding, that a judicial partition comes within the purview of the announced rule, why are the parties here not "relegated to their rights as they existed" before said partition according to the plain terms of the language just quoted if it be necessary to protect vested rights? Is it because the Railroad Commission may have considered only the segregated 1.6 acres in determining the rights of the parties? It is no longer an open question that such order or ruling may be supported upon a ground different from that recited in the order, which of course is but another way of stating that courts are not bound by the reasons given by the Railroad Commission, nor by any particular ground made the basis of its ruling, provided of course another valid basis is shown for same. Sun Oil Co. v. Railroad Commission, 68 S. W. (2d) 609; Smith v. Stewart, 68 S. W. (2d) 627. Substantial

evidence is before us supporting the theory that more wells were necessary, if we consider the situation of the parties as it was prior to the partition. We quote here the testimony given by a witness of defendant in error:

"I believe you do agree that even considering the 5.56 acre triangular tracts as one tract, and considering them as a part of the 41.7 acre tract, that that tract then, consisting of 47.2 acres, considered as a whole, with nine wells on it having a density then of only one well to each 5.25 acres will not produce—I believe as your counsel worded his question—proportionately the amount of oil from underneath this tract as Magnolia will from beneath its tract with a density of one well to each 2.86?

"A. No, sir, it would not.

"Q. Then its corresponding lack of opportunity would exist, would it not, to produce and recover the recoverable oil which exists beneath that 47.2 acre tract as compared to the greater opportunity of the Magnolia to produce all of the recoverable oil beneath its tract of land?

"A. Yes, sir.

"Q. That is correct?

"A. Yes, sir."

\* \* \*

"And you testified that in your opinion it would be necessary, if they are going to get an equal opportunity with these other leases, for them to be accorded even one or two more permits, didn't you?

"A. To make it balance those leases it would be entitled to more.

"Q. As a matter of fact, under proration and Rule 37 operating together, the density of a tract is what is more important in considering whether or not the recoverable oil is being recovered or will be recovered, and whether or not there is an equal opportunity as between adjacent leases?

"A. I believe that is about the way it is usually interpreted. I am not lawyer enough to pass on that.

"Q. Because each of the wells is allowed to produce substantially the amount of oil each day; and if one tract is more densely drilled with wells than another its amount of oil produced each day is going to be proportionately higher, isn't it?

"A. Yes, sir."

See also plat showing lease development surrounding the Giles land exhibited in opinion of Court of Civil Appeals, supra.

This record, some of which we have quoted, shows that one of the theories upon which this case was tried by plaintiffs in error, was that considering the situation of the parties as it existed before any subdivision of the property, and giving practical application and effect to the inherent right of a landowner to obtain his fair share of the oil in place under his land, the permit in question should have been allowed. There was substantial testimony to support such theory, and the action of the Railroad Commission in granting a permit was therefore not arbitrary or unreasonable.

This order of the Railroad Commission was not overborne by any presumption, real or supposed, that followed the enactment of Rule 37. That oft mentioned rule is in the following language:

"No well for oil or gas shall hereafter be drilled in said East Texas Field nearer than 660 feet to any other completed or drilling well on the same or adjacent tract or farm; and no well shall be drilled in said field nearer than 330 feet to any property line, lease line or subdivision line; provided that the Commission in order to prevent waste, or to prevent the confiscation of property will grant exceptions to permit drilling within shorter distances than above prescribed whenever the Commission shall determine that such exceptions are necessary either to prevent waste or to prevent the confiscation of property."

■ By its language the rule is cast into two distinct parts. The first deals with a spacing pattern for the entire field and for wells generally; the second with specific wells, to be drilled as exceptions to the general rule. These two parts compose the entire rule, the one as much as the other, and must be construed together. We interpret their legal effect to be this: An applicant for a permit to drill a well not included within the general terms of the first part of the rule, has the burden of showing a legal right thereto; having secured from the Railroad Commission an order granting a permit to drill, such order when issued is presumptively valid. It is made so by statute, and being an official act would be presumptively valid without a statute. "All rules and rulings of the Railroad Commission are presumed to be valid until the contrary is made to appear." Brown v. Humble Oil & Refining Co., 126 Texas 296, 87 S. W. (2d) 1069, 101 A. L. R. 1393. This presumption casts upon a litigant attacking it in court the burden of proof. Mere proof, as contended for by defendant in error, that the well in question was to be drilled

upon a less acreage than ten, did not sufficiently prove the invalidity of the permit in question. The right to a well and the necessity of drilling for same upon a less acreage was the very purpose of the hearing before the Commission, and presumptively that matter is foreclosed by its order until and unless the invalidity of same is thereafter made to appear.

The judgment of the Court of Civil Appeals is reversed and that of the trial court affirmed.

Opinion adopted by the Supreme Court November 3, 1937.

Rehearing overruled January 12, 1938.