**TIDE WATER ASSOCIATED OIL CO. et al. v. RAILROAD COMMISSION et al.**

**No. 8623.**

Court of Civil Appeals of Texas. Austin.

May 18, 1938.

Rehearing Denied Oct. 26, 1938.

Sanford, McElwee & Cantwell and J. C. Wilhoit, all of Houston, and Powell, Wirtz, Rauhut & Gideon, of Austin, for appellants.

Wm. McCraw, Atty. Gen., Harry S. Pollard, Asst. Atty. Gen., and Felts, Wheeler & Wheeler, of Austin, for appellees.

BAUGH, Justice.

This is a rule 37 case. Appeal is from a judgment of the trial court refusing to set aside a permit granted by the Commission to S. A. Adams on June 29, 1936, as an exception to rule 37, to drill a well on a strip of land in the East Texas oil field 105 feet wide and 825 feet long, containing 2.00416 acres. The order granting the permit recited that it was to prevent confiscation of property.

The material facts are as follows: In May, 1930, J. H. Alexander, fee owner, leased to B. A. Skipper a 50-acre tract, 827 feet wide east and west, and 2639 feet long north and south. Early in 1931, after the discovery of oil in said field and after rule 37 became applicable thereto Skipper by assignment subdivided said lease into six tracts, a tier of three tracts of 10 acres each beginning at the north end of the 50-acre tract and adjoining each other; a 10-acre tract adjoining the south line of said 50-acre tract; a 5-acre tract north of and adjacent to the southern 10 acres; and a second 5-acre tract north of and adjoining the first 5-acre tract. All of these tracts extended the full east and west width of the 50-acre tract, and Skipper obviously thought he had assigned to the various assignees all of the acreage covered by his lease. In May, 1935, more than four years after his last assignment, and for reasons not clear, Skipper assigned to L. B. Cohen and B. A. Adams whatever lease he had on the strip here in controversy, locating it between the south line of middle 10-acre tract, the lease on which had been assigned by him in 1931, and the north line of the upper or northern 5-acre tract above referred to. In January, 1936, Cohen quitclaimed his interest to Adams who was granted the permit here involved. The spacing provisions of rule 37 when the 1931 assignments by Skipper were executed were 150–300 feet. When the assignment of the strip here involved was made they were 330–660 feet.

Two wells were applied for on said strip, one 284 feet from the east end thereof and the other 280 feet from the west end. Only one well was granted and that in the center of the tract. The lease holders to the north, south, and west protested. The only evidence offered in the hearing before the examiner for the Railroad Commission on Adams' application related to the location and ownership which was there contested, of the leasehold estate on the strip in question—the protestants making the contention and taking the view that this strip constituted a voluntary subdivision of a larger tract capable of development as a whole without necessity for an exception to rule 37, and that applicant therefore had no vested right to be protected by such an exception. The question of waste seems not to have been considered. The statement of the examiner to the Commission was that under the spacing distances in force in 1931 (150–300 feet) when Skipper partitioned his lease, a well would be authorized on a square tract containing 2.06 acres, and that the tract here involved contained substantially that amount. He made no recommendation as to whether the application should be granted or denied.

It is not controverted that Skipper's assignment by piecemeal of his 50-acre leasehold in 1931, capable of development as a whole without exception to rule 37, was a voluntary segregation of the strip here involved and clearly in contravention of the spacing requirements of rule 37. That under the undisputed facts neither he, nor his assignee, obtained any vested rights to an exception thereunder, is now settled. We expressly so held originally in Sun Oil Co. v. Railroad Commission, Tex.Civ.App., 68 S.W.2d 609, approved by the Supreme Court in Stewart v. Smith, 126 Tex. 292, 83 S.W.2d 945, and again expressly approved in Railroad Commission v. Magnolia Petroleum Company, Tex.Sup., 109 S.W.2d 967, 970.

Nor can the permit here involved be sustained under what we understand to be the application of such rule made by the Supreme Court in the case last above cited. That is, if the segregated tract be treated as part of the larger tract, and the entire tract be shown to be entitled. to an additional well, then the permit should be sustained. In the instant case the uncontroverted evidence showed that the 50-acre tract, taken as a whole, with the wells already drilled thereon, was more densely drilled than any of the surrounding leases, in some instances the ratio being more than 2 to 1; that its production per acre under the allowable was greater per acre than any other surrounding lease; and the records of the Comptroller's office showed that since 1931, this 50-acre tract had produced a much higher percentage of the oil estimated to be in place beneath it, than had any of the surrounding leases.

Nor can such permit be sustained under our holding in Humble Oil & Refining Co. v. Railroad Commission, Tex.Civ.App., 94 S.W.2d 1197. In that case we held that the configuration of the applicant's tract constituted a reasonable and substantial compliance with the controlling spacing provisions of the rule, and did not in fact require an exception to the rule as it existed at the time the property was acquired. The requirement that a well be located no less than 150 feet from another property line manifestly contemplated that the adjacent owner would be authorized to offset it to prevent drainage. The instant case presents a strip only 105 feet wide, necessitating a well within 53 feet of property lines on each side; whereas the rule required 150 feet spacing from property lines. Manifestly such could not be deemed an approximation to a compliance with the rule.

At the time of the assignments by Skipper in the early part of 1931, rule 37 provided for 150-300-foot spacings of wells, but the rule was amended on September 2, 1931, to provide 330-660-foot spacings, or one well to 10 acres. This amendment was adopted after the amendments to the conservation laws enacted at the 1st C.S.42nd Leg., Ch. 26, p. 46, and a full hearing before the Railroad Commission relating to the East Texas. field. The reasons recited in the order itself for increasing such spacing distances were as follows: "It appearing from the evidence that the spacing of wells in said East Texas field, under the terms and provisions of the Railroad Commis-

sion's oil and gas conservation Rule 37 threatens to cause actual physical waste due to the too rapid dissipation of gas energy in the production of oil and also due to the too rapid encroachment of water, and that in the interest of preventing actual physical waste of oil and gas in said East Texas field, it is desirable to modify said Rule 37 as applied to said field."

Manifestly at that time the Commission determined that there was a direct relationship between the stated spacing of wells and "actual physical waste"; and that greater spacing distances than rule 37 had theretofore provided were necessary to prevent it. Exceptions were authorized where necessary to prevent waste, or to protect vested rights. Numerous amendments to said rule have since been made by the Commission, but in none of them, in the various cases brought before us have the 330–660 spacings as applied to the East Texas field been changed, and in none of them which have been called to our attention have the reasons above quoted, stated in the order of September 2, 1931, as a basis for such spacings, been abandoned or modified.

Under these circumstances in the early consideration of these harrassing and perplexing questions this court, in the several rule 37 cases reported in 68 S.W.2d 609–628, and in subsequent decisions wherein the Supreme Court has refused writs of error have adhered thereto, has held that the spacing provisions constituted, prima facie, a finding by the Commission that, absent some differentiating conditions, wells spaced at lesser distances and producing equally would tend to cause waste; and likewise that one who, after the rule became applicable, acquired by voluntary segregation a leasehold estate on a tract of such size and configuration, and out of a larger tract capable of development as a whole without exception to the rule, obtained no vested right to be protected by an exception to the rule. Pursuant to this latter holding, the Commission itself, on May 29, 1934, passed in writing, duly signed and authenticated, the following order: "It is ordered by the Railroad Commission of Texas that in applying Rule 37 (Spacing Rule) of Statewide application and in applying every special rule with relation to spacing in every field in this State no subdivision of property made subsequent to the adoption of the original spacing rule will be considered in determining whether or not any property is being confiscated within

the terms of such spacing rule, and no subdivision of property will be regarded in applying such spacing rule or in determining the matter of confiscation if such subdivision took place subsequent to the promulgation and adoption of the original spacing rule."

While the Commission, because of the area involved in this strip, may have taken the view that the applicant had a vested right which he was entitled to have protected by an exception, it is manifest that under the rule against voluntary subdivisions he did not. The result is, therefore, that the exception granted was in contravention of their own order of May 29, 1934. Though a permit, under the statute is presumed to be valid unless the contrary is shown, in the instant case it was made to appear that same was granted contrary to the Commission's own published order, forbidding the granting of such permit on the grounds on which the permit itself recites that it was granted. Under the Commission's own order, therefore, the reasons given by the Commission for its amendment thereto increasing well spacing distances, and the amendment of May 29, 1934, manifestly intended to put applicants for such permits upon notice that unauthorized subdivisions necessitating exceptions to said rule would not be considered, it is clearly manifest that the instant permit cannot be sustained on the grounds recited for granting it.

Under these facts and circumstances should the presumption be indulged in support of the permit that it was authorized to prevent waste, and the burden cast upon the contestant to show the contrary? Under the provisions of the statute and the holdings in Brown v. Humble Oil & Ref. Co., 126 Tex. 296, 83 S.W.2d 935, 87 S.W. 2d 1069, 101 A.L.R. 1393; and in Railroad Commission v. Magnolia Petroleum Co., Century Case, Tex.Sup., 109 S.W.2d 967, such burden rested upon the contestants. It is the contention of appellees that they did not discharge it, and that therefore the trial court's judgment should be affirmed.

Other than the documentary evidence introduced, which included among other things Adams' application with his map of the immediate area attached thereto, and a map of the surrounding area eight times the size of the 50-acre tract, showing the location of wells, only one witness testified. R. D. Parker, who from the date of the discovery of the East Texas field up to 1934,

was the oil and gas supervisor for the Commission, and who testified that during that time he prepared the various orders of the Commission, testified at length and in detail, his direct and cross-examination, together with numerous controversies between counsel, comprising 155 pages of the statement of facts. While this testimony would undoubtedly have sustained a finding that waste would result, rather than be prevented, by the drilling of this additional well, we are not prepared to say that the trial court erred in holding that the contestants did not discharge the burden cast upon them to rebut the presumption of the validity of the permit. If the conditions in this area had been shown to be uniform and typical of the field in general, we are clearly of the opinion that such presumption in favor of the validity of the permit was rebutted. It appears not to be controverted, however, that the tract in controversy is situated near the eastern edge of the field, and that the oil sands "pinched out" and the area became unproductive less than a mile to the east of this tract; that the oil producing sands grew thicker and more porous to the west of said tract; that unproductive wells had been drilled less than a mile away to the northwest, south and southeast of this tract; that a well on the south 10 acres of this 50-acre tract came in as a "pumper"; that the oil producing sand in this immediate area was thinner, less permeable, contained more shale and volcanic ash than the sands to the west; and that in this area, due to these conditions, a well would drain less area surrounding it than in the field generally. It was also shown that the wells in this area were classed as marginal wells and their flow prorated accordingly.

Under these facts and circumstances, the fact that the legislature itself has taken cognizance (See Art. 6049b, Vernon's R. C.S. as amended) that a differentiation should be made between marginal wells and the more productive areas of a field; in view of the fact that the witness testified that he based his conclusions as to waste in part at least on facts and records on file with the Railroad Commission; and presuming that the Commission considered these factors (though the record here presented fails to show that they did) in granting the permit here involved, we cannot say as a matter of law that there was no substantial evidence before the Commission to sustain it. It follows therefore

548

that the judgment of the trial court should be affirmed.

Affirmed.

BLAIR, Justice (dissenting in part).

I concur in the judgment sustaining the permit upon the ground stated. I do not concur in the interpretation of amended rule 37 dated September 2, 1931, as set forth in the opinion of Justice Baugh, to the effect that the language of the rule meant that wells drilled closer than the 330-660-foot spacing distances provided, constituted a finding that greater spacing distances were necessary to prevent waste. In the first place, such a finding would mean that the Commission necessarily found that the thousands of wells theretofore drilled under the lesser (150-300-foot) spacing rule would continuously thereafter cause waste. In the second place, and assuming that the Commission made such a finding of fact, then its later amendments and interpretations of the Special East Texas Rule 37 clearly show that the finding was a mistake. On June 13, 1933, the Commission again amended the East Texas Special Rule 37 so as to relax a rigid enforcement of it, the preamble thereto reading as follows: "It appearing to the Commission, from evidence adduced at the East Texas hearing held in Austin on June 12, 1933, that Rule 37, limiting the spacing of wells in the East Texas Field, including Upshur, Smith, Rusk, Gregg, and Cherokee Counties, Texas, should be amended in order that properties might be more fully developed so as to insure a maximum oil recovery and to allow owners of various properties in said field to protect themselves against inequities which might result from a strict enforcement of Rule 37."

Again and again, by its orders of August 26, 1935, and February 24, 1936, and continuously since by its application of the East Texas Rule 37, the Commission has interpreted said rule, reciting in the first mentioned order that from evidence adduced at its many hearings and from its actual experience and through its experts continuously employed in the administration of the rule, that the closer wells are drilled the greater will be the ultimate recovery of oil and gas from the area so drilled, provided the wells produce equally; and closer spacing is accomplished through application of the exceptions to the general rule to prevent waste or confiscation of property. And unquestionably the Supreme Court held in the Century Case, R. R. Comm. v. Magnolia Pet. Co., 109 S.W.2d 967, that the rule "was not overborne by any presumption, real or supposed," as to waste being caused by drilling wells at closer distances than the general spacing distances prescribed.

McCLENDON, Chief Justice (dissenting).

My views of the law of this case are expressed in Gulf Oil Corporation v. Wood, Tex.Civ.App., 120 S.W.2d 543.