**ALLIED BANK MARBLE FALLS, Appellant,**

v.

**STATE BANKING BOARD, et al., Appellees.**

**No. 3–86–151–CV.**

Court of Appeals of Texas, Austin.

Sept. 23, 1987.

Rehearing Denied Nov. 10, 1987.

75

Thomas A. Rudledge, Sneed, Vine, Wilkerson, Selman & Perry, Austin, for appellant.

Jim Mattox, Atty. Gen., Deborah Herzberg Loomis, Asst. Atty. Gen., Larry Temple, Austin, for appellees.

Before POWERS, GAMMAGE and CARROLL, JJ.

POWERS, Justice.

The State Banking Board approved the application for a charter authorizing a new bank to operate in Llano County, Texas under the name "United Bank Horseshoe Bay." An existing bank in the vicinity, Allied Bank Marble Falls, opposed the application in the board proceeding and sued in district court for judicial review of the Board's final order approving the application, in which suit United Bank intervened. The district court affirmed the Board's final order and Allied Bank appeals to this court. Tex.Rev.Civ.Stat.Ann. arts. 342–115, §§ 5, 7 and 342–305 (Supp.1987); Texas Administrative Procedure and Texas Register Act (APTRA), Tex.Rev.Civ.Stat. Ann. art. 6252–13a, §§ 19, 20 (Supp.1987). We will reverse the judgment and remand the cause to the district court with an order that the case be remanded to the Board for further proceedings not inconsistent with our opinion.

## THE CONTROVERSY

The Legislature has directed the Board to "hear and determine applications for State banking charters," art. 342–115, § 5, exercising its discretion in that regard according to the legislative commands set forth in art. 342–305:

A. Applications for a State bank charter shall be granted only upon good and sufficient proof that *all* of the following conditions presently exist:

(1) A public necessity exists for the proposed bank;

(2) The proposed capital structure is adequate;

(3) The proposed bank's anticipated volume of business is such as to indicate profitable operation;

(4) The proposed officers and directors have sufficient banking experience, ability and standing to render success of the proposed bank probable; and

(5) The applicants are acting in good faith.

The burden to establish said conditions shall be upon the applicants.

\*   \*   \*   \*   \*   \*

D.... After full and public hearing the Board shall vote and determine whether the necessary conditions set out in Section A above have been established. Should the Board, or a majority of the Board, determine *all* of the said conditions *affirmatively*, then the application shall be approved; if not, then the application shall be denied....

\*   \*   \*   \*   \*   \*

(Emphasis added). In the present case, a majority of the Board found that all five "conditions" had been "established" and, accordingly, approved the application for United Bank in the final order we now review.

The Board's final order was subject to the terms of APTRA § 16(b) which provides as follows:

A final decision must include findings of fact and conclusions of law, separately stated. Findings of fact, *if set forth in statutory language*, must be accompanied by a concise and explicit statement of the *underlying* facts *supporting* the findings [set forth in statutory language]....

(Emphasis added). Among other points of error brought to this Court, Allied complains that the Board's final order is invalid because it does not comply with APTRA § 16(b). *Railroad Commission of Texas v. Entex, Inc.,* 599 S.W.2d 292 (Tex.1980); *see also, Texas Health Facilities Commission v. Presbyterian Hospital North,* 690 S.W. 2d 564 (Tex.1985). The single issue we now consider is the facial sufficiency of the Board's final order under the requirements of APTRA § 16(b). We hold the Board's order does not meet the requirements of the statute.

## THE LEGISLATIVE PURPOSE IN APTRA § 16(b)

The Board's final order illustrates a theory, having currency in some quarters, that the requirements contained in APTRA § 16(b) are entitled to about the same de-

gree of deference as, for instance, the rules of grammar. While these requirements should be observed, more or less, a failure to do so hardly justifies the invalidation of an agency's final decision that is reached only by the expenditure of large amounts of toil, time, and treasure. We do not subscribe to this theory. Like any valid statute, APTRA § 16(b) is binding on all who come within its terms, including the Board and the courts. It is entitled to the same good-faith obedience and enforcement as any other statute, not only because it *is* a valid legislative enactment but also because it is designed to serve a supervening purpose essential to the conduct of State government through administrative agencies.

■ The terms of APTRA apply to most State administrative agencies having the

statutory authority to hear and determine contested cases.[1] The basic legislative purpose in APTRA § 16(b) is *to secure the rule of law* in the agencies' exercise of that discretion which the Legislature has entrusted to them in the form of a delegated power to decide contested cases—that is to say, the power to find the facts from the evidence and to apply to them the statutory law (including administrative policies developed under such statutes) committed to the agencies' administration. We will review briefly *how* the requirements of APTRA § 16(b) effectuate this basic purpose because the false theory mentioned above rests apparently upon a serious misunderstanding about the importance of that statute *and* what it means when it mandates a "concise and explicit statement of the underlying facts" that "support" those findings of ultimate fact that an agency has "set forth in statutory language" as its

1. The terms of APTRA § 16(b) are essentially the same as those contained in § 12 of the Model State Administrative Procedure Act from which APTRA was generally derived. McCalla, *The Administrative Procedure and Texas Register Act*, 28 Baylor L.Rev. 445, 457 (1976). The Commissioners' comment to that part of § 12 of the Model Act which corresponds to APTRA § 16(b) states that it was "to require the *agency findings to go beyond a mere statement* of a general conclusion in the statutory language ... *or in language of similar generality.*" Revised Model State Administrative Procedure Act § 12, 14 U.L.A. 419 (1961) (emphasis added). The comment states further that the drafters' intent was "to require the degree of explicitness imposed by decisions such as Saginaw Broadcasting Co. v. FCC ... where the court required a statement of 'the basic or underlying facts.'" *Id.* The comment necessarily incorporates the reasoning of the *Saginaw* opinion. In the *Saginaw* case, the court observed that ultimate facts, usually found in the language of the statute, were to be inferred from the underlying facts found by the agency. The court reasoned that to "support" an agency order, the set of findings of fact must include the underlying facts from which the ultimate facts, expressed in statutory terms, are inferred. "A reviewing court cannot properly exercise its function upon findings of ultimate fact alone, but must require also findings of the basic facts which represent the determination of the administrative body as to the meaning of the evidence, and from which the ultimate facts flow." *Saginaw Broadcasting Co. v. F.C.C.,* 96 F.2d 554, 561 (D.C.Cir.), *cert. denied,* 305 U.S. 613, 59 S.Ct. 72, 83 L.Ed. 391 (1938).

The importance of findings of fact to the rule of law is succinctly explained in the following passage from the *Saginaw* opinion:

The requirement that courts, and commissions acting in a quasi-judicial capacity, shall make findings of fact, is a means provided by Congress for guaranteeing that cases shall be decided according to the evidence and the law, rather than arbitrarily or from extralegal considerations; and findings of fact serve the additional purpose, where provisions for review are made, of apprising the parties and the reviewing tribunal of the factual basis of the action of the court or commission, so that the parties and the reviewing tribunal may determine whether the case has been decided upon the evidence and the law or, on the contrary, upon arbitrary or extralegal considerations. When a decision is accompanied by findings of fact, the reviewing court can decide whether the decision reached by the court or commission follows as a matter of law from the facts stated as its bases, and also whether the facts so stated have any substantial support in the evidence. In the absence of findings of fact the reviewing tribunal can determine neither of these things. The requirement of findings is thus far from a technicality. On the contrary, it is to insure against Star Chamber methods, to make certain that justice shall be administered according to facts and law. This is fully as important in respect of commission as it is in respect of courts.

*Id.* at 559.

justification for the final decision it reached.[2]

While the distinction is not explicitly stated in APTRA § 16(b), that statute necessarily distinguishes between "underlying facts" and "ultimate facts" as these familiar expressions are used in the field of administrative law. Powers, *Judicial Review of the Findings of Fact Made by Texas Administrative Agencies in Contested Cases*, 16 Tex.Tech L.Rev. 475, 483–84 (1985). The statute *does* explicitly require that the agency's order contain "a concise and explicit statement of the underlying facts" that support, in the agency's view, any finding of ultimate fact that is "set forth in statutory language." *What*, then, constitutes a finding "set forth in statutory language?"

In *Texas Health Facilities Commission v. Charter Medical–Dallas*, 665 S.W.2d 446 (Tex.1984), the Supreme Court held that the expression "set forth in statutory language" refers to "all statutory [sic] fact findings *that represent the criteria that the legislature had directed the agency to consider in performing its function.*" *Id.* at 451 (emphasis added). In the present case, these criteria are therefore the five determining propositions or "conditions" set out in art. 342–305, A(1)–(5). The Board must affirmatively find that these were "established" by "good and sufficient proof" before it must approve the charter application. They involve the issues of: public necessity; adequate capital structure; volume of business indicating a prospect of profitable operation; directors and officers having experience, ability, and standing such as to render success probable; and, applicants acting in good faith.

By requiring the agencies to formulate and set forth the findings of underlying fact that support the agencies' findings of ultimate fact expressed "in statutory language," the Legislature intended to se-

---

2. Section 16(b) of APTRA is not the first Texas statute wherein the Legislature has required that an administrative agency state in writing the findings of fact upon which it acted in reaching its final decision.

The Texas law interpreting such a statutory requirement developed first in reference to a provision contained in a regulatory statute administered by the Texas Railroad Commission: the Texas Motor Carrier Act, Tex.Rev.Civ.Stat.Ann. art. 911b (1964 & Supp.1987), first enacted in 1929. In a 1931 amendment of the original enactment, § 12 was amended to require the Commission to "file a concise written opinion *setting forth the facts and grounds* for its action" in any order granting or denying an application for a permit or certificate issuable by the Commission following a "contested hearing." 1931 Tex.Gen.Laws, ch. 277, § 12, at 490 (emphasis added). In 1941, the Act was again amended, this time in reference to a category of motor carrier denominated "specialized motor carriers," and a new § 5a was added to the Act. Section 5a(d), dealing with the Commission's issuance of certificates of convenience and necessity to such carriers, on their application therefor, provided as follows:

The order of the Commission granting said application and the certificate issued thereunder shall be void unless the Commission shall set forth in its order *full and complete findings of fact pointing out in detail* the inadequacies of the services and facilities of the existing carriers, and the public need for the proposed service [these being two of the statutory criteria governing the Commission's decision to grant or deny an application].

1941 Tex.Gen.Laws, ch. 442, § 4, at 717 (emphasis added). Several of the Supreme Court decisions construing these two provisions of the Act are cited in the text of this opinion.

Another pre-APTRA statute requiring an agency to demonstrate support for its findings of ultimate fact by means of written findings of underlying fact is the Texas Savings and Loan Act, Tex.Rev.Civ.Stat.Ann. art. 852a (1964 & Supp. 1987), first enacted in 1963. Section 11.11(4) of the original enactment, in language derived from the Model State Administrative Procedure Act, as was APTRA § 16(b), provided as follows:

A decision or order adverse to a party who has appeared and participated in a hearing shall be in writing and shall include findings of fact and conclusions of law, separately stated, on all issues material to the decision reached. *Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings.*

1963 Tex.Gen.Laws, ch. 113, § 11.11(4), at 298 (emphasis added.)

In our opinion in *Presbyterian Hospital North v. Texas Health Facilities Commission*, 664 S.W.2d 391, 396–401 (Tex.Civ.App.1983), *aff'd in part* 690 S.W.2d 564 (Tex.1984), we discussed at length the pertinent provisions of the Texas Motor Carrier Act and the Texas Savings and Loan Act, as well as the various opinions of the Supreme Court that assigned meaning to them. We discussed as well the decisions of that Court construing APTRA § 16(b) as of the date of our opinion in *Presbyterian Hospital*. We refer the interested reader to that rather full discussion and analysis of the case law.

cure the rule of law, in agency adjudications, in the following ways.

The requirement protects against the adjudication of contested cases on the basis of secret or extralegal considerations while encouraging concurrently their adjudication according to the applicable law and the evidence adduced in the particular case. *Miller v. Railroad Commission*, 363 S.W. 2d 244 (Tex.1963); Model State Administrative Procedure Act, § 4–215(c), 14 U.L.A. 371 (Supp.1981); 2 Cooper, *State Administrative Law*, 467–68 (1965). For example, a "concise and explicit statement" in writing of the underlying facts, from which the ultimate facts were inferred, reduces the risk of abuse arising from bias or favoritism. For another example, the simple self-discipline inherent in formulating such a statement tends to assure the agency's *bona fide* consideration of the evidence and the applicable law while guarding against the lesser vices of caprice and carelessness.

The requirement assures that the parties to the contested case will be informed of the facts found by the agency from the evidence adduced in the particular case, and thus the agency's rationale in arriving at the ultimate facts that dictated its final decision. The parties, in consequence, are able to *understand* the agency adjudication and intelligently prepare and advocate in a meaningful way their respective positions in connection with any motion for rehearing or any suit for judicial review. *Miller v. Railroad Commission, supra;* Model State Administrative Procedure Act, *supra.*

■■■ The requirement enables a reviewing court to perform its statutory duty of judicial review under APTRA § 19, or any other applicable statute, while confining its review within the statutory or constitutional limits assigned to the judiciary. *Miller v. Railroad Commission, supra;* Model State Administrative Procedure Act, *supra.* For example, a reviewing court cannot possibly determine whether "substantial evidence" supports an agency's finding of underlying fact, as the court may be required to do when a party invokes APTRA § 19(e)(5), unless the agency first declares explicitly, and in a manner understandable to a court, the underlying facts it *did* infer from the evidence adduced in the case. For another example, a reviewing court invades the authority of the agency when the court attempts to *speculate* about a set of underlying facts that *it* might *imagine* or *abstract from the evidence* in "support" of an agency's findings of ultimate fact expressed "in statutory language." It is for the agencies and *not* the courts to determine the *meaning of the evidence*—which is oftentimes scientific or technical in nature—where the *truth* lies among competing factual contentions, and thus the essential connecting *links* between the evidence and the choice of ultimate facts that the agency deemed proper in applying the law to the facts. *See Phelps Dodge Corp. v. National Labor Relations Board,* 313 U.S. 177, 197, 61 S.Ct. 845, 853, 85 L.Ed. 1271 (1941). For a court to require the agency to do its statutory duty in this regard, by insisting that the agency supply the "concise and explicit statement" of the underlying facts that APTRA § 16(b) demands so distinctly and emphatically, is to *affirm* most forcefully the agency's authority and *not to usurp that authority. Id.* Statements to the contrary are only sophistries based upon a serious misconception of the principles involved.[3]

---

3. We refer, for example, to statements such as the following, made in summation of the Supreme Court's decision in *Texas Health Facilities Commission v. Charter Medical–Dallas,* 665 S.W.2d 446, 452 (Tex.1984):

> More importantly, however, the Texas Supreme Court, disagreeing with the court of appeals, declared that there were sufficient findings in the agency's order for the court to "fairly and reasonably say that the underlying or basic facts support the Commission's conclusions on the ultimate" facts. Furthermore, the court held that it is not the duty of the judiciary to determine whether the agency arrived at the correct conclusion; *rather, the true test is whether some "reasonable basis exists in the record for the action taken by the agency"....*

Chamblee, *Administrative Law: Journey Through the Administrative Process and Judicial Review of Administrative Actions,* 16 St. Mary's L.Rev. 155, 182 (1984) (emphasis added.) Care-

ful scholarship would have revealed that the decision cited by the Supreme Court for the proposition emphasized above, *Gerst v. Nixon,* 411 S.W.2d 350 (Tex.1966), was a decision dealing with the pre-APTRA practice where a reviewing court *itself* heard evidence and decided from *that* evidence whether the disputed conclusion reached by the agency "was reasonably supported by substantial evidence:"

> In the usual judicial review of an administrative order in Texas, the issue is not whether the regulatory agency actually heard and considered sufficient evidence to reasonably support its action, but whether at the time the questioned order was entered there then existed sufficient facts to justify the agency's order. *The evidence actually heard by the agency is not material* but the parties are given a full opportunity in their appearance *before a judicial body* "to show that at the time the order was entered there did, or did not, then exist sufficient facts to justify the entry of the same." *Cook Drilling Company v. Gulf Oil Corporation,* 139 Tex. 80, 161 S.W.2d 1035 (1942).

*Gerst v. Nixon, supra,* at 354. Of course, the "reasonable basis" rule cannot now apply in substantial-evidence review cases governed by APTRA § 19, for that manner of review "is confined to the agency record, except that the court may receive evidence of procedural irregularities alleged to have occurred before the agency but which are not reflected in the record." APTRA § 19(d)(3).

A related comment in the Supreme Court's *Charter Medical* opinion gives greater opportunity for misunderstanding. We refer to the following:

> A reviewing court is not bound by the reasons given by an agency in its order, provided there is a valid basis for the action taken by the agency. *Railroad Commission v. City of Austin,* 524 S.W.2d 262, 279 (Tex.1975)....

665 S.W.2d at 452. The rule stated is undoubtedly true when it is applied, as it was in the *City of Austin* case cited by the Supreme Court, to the agency's determination of a *question of law.* There, the agency dismissed an application without stating the legal ground upon which it did so, whether because it believed it had no statutory jurisdiction or because it believed to the contrary but had the statutory discretion to determine the application in another proceeding. The Supreme Court held the agency had both. Consequently, it was immaterial that the agency order did not state the legal basis upon which it rested. 524 S.W.2d at 279. *See also, Texas Employment Commission v. Hays,* 360 S.W.2d 525, 527 (Tex.1962) (agency's erroneous construction of passage in regulatory statute would not invalidate order where proper construction dictated the same result).

A careful review of the Supreme Court decisions on the point in issue reveals, however, that the rule stated ("A reviewing court is not bound by the reasons given by an agency in its order, provided there is a valid basis for the action

taken by the agency.") cannot apply in such a way as to permit the reviewing court to imagine from the evidence a set of facts that might support the agency's final order in some manner that seems proper to the court itself. That is, the rule cannot apply to an agency's *factual determinations or its reasoning from those facts to the findings of ultimate fact* upon which the agency based its final decision.

The rule stated by the Supreme Court in *Charter Medical* originated in *Railroad Commission v. Magnolia Petroleum Co.,* 130 Tex. 484, 109 S.W. 2d 967 (1937), where it was applied, as in *Gerst v. Nixon, supra,* to the pre-APTRA practice where the court reviewed the "final ruling" of the agency "based upon the evidence adduced at a judicial hearing, as to the situation of the parties at the time of such ruling." 109 S.W.2d at 971. Only two years after its *Magnolia* opinion, however, the Court explained that opinion in terms that can leave no doubt whatever that the rule does *not* apply to an agency's factual determinations, in respect of which the agency's final order must be judged on the basis *stated by the agency,* both as to the underlying facts and as to the mixed questions of law and fact that are involved in any agency's findings of ultimate fact. The Court did so in *Gulf Land Co. v. Atlantic Refining Co.,* 134 Tex. 59, 131 S.W.2d 73 (1939).

In the *Gulf Land* case, the Court stated that the rule enunciated in *Magnolia* meant that the reviewing court should sustain an agency "order if it is correct on any *theory of law* applicable to the case, and that regardless of whether or not the [agency] gives a correct legal reason for such order, or whether or not it gives any reason at all therefor." 131 S.W.2d at 84 (emphasis added). Continuing, however, the Court wrote that the rule "cannot mean" that a reviewing court may "determine a material controverted fact question which was not passed on at all by the" agency and sustain the agency's order on that basis, for "that would be to violate the very fundamental rule that the [agency] determines primarily and finally all fact issues,—that is, all issues that are not established as a matter of law." *Id.* In reference to findings of ultimate fact, the Court stated that a reviewing court may not uphold a final decision on one such finding of ultimate fact, believed by the court to be dictated by the evidence, when the order rests on a *different* finding of ultimate fact expressly chosen by the agency and stated in its final order as the basis for its final decision. *Id.* And, of course, in *Morgan Drive Away, Inc. v. Railroad Commission,* 498 S.W.2d 147, 152 (Tex. 1973), the Supreme Court specifically wrote that, in questions relating to the agency's reasoning from the evidence to its findings of fact and from them to its findings of ultimate fact, the reviewing court must measure the sufficiency of the order "by what it says," and not by judicial speculation about what "path" the agency *might* have followed, based on how the court viewed the mass of evidence contained in the record.

We shall, therefore, examine the Board's final order in light of the requirements of APTRA § 16(b) and the great importance it bears in securing the rule of law in administrative government.

## THE BOARD'S FINAL ORDER IN THE PRESENT CASE

As mentioned previously, the terms of art. 342–305 require the Board to make affirmative findings relative to each of the five propositions or "conditions," set out in the article, before the Board approves an application. Tracking the language of the five "conditions," and under the heading "Ultimate Findings," the Board declared in its final order that each was found by it from "good and sufficient proof." These findings of ultimate fact are unquestionably expressed "in statutory language" and are "mandatory fact findings" under the *Charter Medical* decision. We find, however, that the order does not contain the requisite "concise and explicit statement of the underlying facts supporting the findings" of ultimate fact, as APTRA § 16(b) requires. Indeed, the Board's order is anything but "concise and explicit" with regard to the underlying facts upon which it purportedly rests.[4]

The order contains two sections that purportedly set out the findings of underlying fact inferred by the Board from the evidence adduced. Those set out in Section III purportedly support the Board's findings of ultimate fact relative to adequate capital structure, the applicants' good faith, and the experience, ability, and standing of the proposed directors and officers. Those set out in Section IV purportedly support the Board's findings of ultimate fact relative to the criteria of public necessity and an anticipated volume of business indicative of profitable operation. In neither section are the purported findings stated concisely or explicitly; in some respects, they are missing entirely.

■ The chief characteristic of these purported findings of underlying fact is that they are equivocal, undecided, or mere summaries of the evidence interwoven with expositions about the contentions of the parties. The entirety of the two sections is dominated by such phrases as "the protestant urged," "the testimony reflects," "it is suggested," the witness "expressed the opinion," and the witness "testified." The two sections do not constitute "findings" of any kind for they do not even purport to declare the truth, as to the adjudicative facts in issue, which the Board might have determined from the evidence adduced. They do not satisfy the requirements of APTRA § 16(b). *Miller v. Railroad Commission, supra; Gage v. Railroad Commission,* 582 S.W.2d 410 (Tex.1979); *Morgan Drive Away, Inc. v. Railroad Commission,* 498 S.W.2d 147 (Tex.1973). We hold accordingly and would prefer to rest our decision on the foregoing alone, for we are required to judge the statutory sufficiency of the Board's order, as against the findings of underlying and ultimate fact required by APTRA § 16(b), *solely by what the order says. Morgan Drive Away, Inc. v. Railroad Commission, supra* at 152; *Gulf Land Co. v. Atlantic Refining Co.,* 134 Tex. 59, 131 S.W.2d 73 (1939); *see also, Railroad Commission v. Wencker,* 140 Tex. 527, 168 S.W.2d 625 (1943); *Shell Petroleum Corp. v. Railroad Commission,* 133 S.W.2d 194 (Tex.Civ.App.1939, writ ref'd).

---

4. "We must know what a decision means before the duty becomes ours to say whether it is right or wrong." *United States v. Chicago, M., St. P. & P.R.R.,* 294 U.S. 499, 511, 55 S.Ct. 462, 467, 79 L.Ed. 1023 (1935). "If there are no findings, 'In Lord Sumner's famous phrase, the record 'speaks' only with the 'inscrutable face of a sphinx.' In such circumstances, the 'silence' of the record renders it pragmatically impossible for the court to perform its function of review." Schwartz, *Administrative Law* at 425 (1986). In requiring a "concise and explicit statement" of the underlying facts, APTRA § 16(b) either means what the words "concise" and "explicit" clearly imply, or it means nothing at all—it is a shadow, a hoax, an empty slogan. Unless a reviewing court has the power to *require* the agency to supply *understandable* findings of fact demonstrating *plainly* their support for the findings of ultimate fact, the final order might as well be written in Sanskrit. *Amtel Communications v. Public Utilities Commission of Texas,* 687 S.W.2d 95, 107 n. 1 (Tex.App.1985, no writ). Judicial review is a wasteful charade without an order understandable to the court.

■ That is to say, we may not uphold the Board's orders on the basis of any one or more "presumed findings" of either class that the Board *might* have made, based upon the evidence adduced, but did not in fact make and express in its final order. For a court to uphold the agency's decision based upon such judicial speculation about the factual grounds upon which the agency *might* have acted is to invade illegally the prerogatives and duties of the agency—its powers and obligation to determine "primarily and finally all fact issues, —that is, all issues that are not established as a matter of law." *Gulf Land Co. v. Atlantic Refining Co., supra,* 131 S.W.2d at 84.

■ The foregoing precepts, applicable to the judicial review of the *factual* grounds upon which the agency acted in reaching its final decision, are to be distinguished from the *opposite* rule that applies in the judicial review of the *legal* grounds upon which the agency's final order rests. With respect to those grounds, the order must be sustained if it is correct on any theory of law applicable to the case, it being immaterial whether the agency states the correct legal reason in its order or any such reason at all, for the order is presumably valid. *Id.* This rule originated in *Railroad Commission v. Magnolia Petroleum Co.,* 130 Tex. 484, 109 S.W.2d 967, 971 (1937); it was clarified in *Gulf Land Co., supra,* with respect to the distinction just mentioned. The distinction made as to the legal and factual grounds that support agency orders has never been overruled and must be borne in mind for an accurate understanding of passages in other opinions that appear, at first glance, to disregard the distinction in favor of a broader statement. *See, e.g., Texas Health Facilities Commission v. Charter Medical–Dallas, supra* at 452 ("A reviewing court is not bound by the reasons given by an agency in its order, provided there is a valid basis for the action taken by the agency."); *Railroad Commission v. City of Austin,* 524 S.W.2d 262, 279 (Tex.1975) ("The courts are not bound by the reasons given by Boards or Commissions in their orders, or by any particular ground made the basis of their rulings, provided there is a valid basis for what they do."). These may not be construed as mindlessly obliterating the fundamental and essential distinction, so specifically and carefully laid out in *Gulf Land Co., supra,* between the factual and legal grounds that support an agency order.[5]

The Supreme Court, however, in its *Charter Medical* opinion, impliedly sanctioned by example, if it did not explicitly require, a reviewing court's examining an order such as this to determine whether any identifiable parts of it, in isolation from all the rest, might resemble a finding of underlying fact sufficient to "support" the agency's findings of ultimate fact. Our doing so here raises a distinct risk that we might invade the authority of the Board and exceed our own proper constitutional and statutory limits. A moment's reflection will suggest why this must be so.

■ When we disregard all the improper "findings" of underlying fact, any that remain cannot constitute *the entire set of factual determinants* that the Board believed important to the choice of ultimate facts that the Board ultimately made and expressed in the statutory language of art. 342–305 A(1)–(5). Moreover, we are not informed of any *applicable administrative policies* in light of which the evidence and any surviving underlying fact are properly viewed. *Any* of the statutory criteria contained in art. 342–305 A(1)–(5) might require the appraisal of factual matters from the standpoint of public policies that *only* the Board may formulate and adopt in its discretion. *Chemical Bank & Trust Co. v. Falkner,* 369 S.W.2d 427 (Tex.1963). A court intrudes illegally upon the Board's autonomy in that regard if the court attempts to evaluate the factual determinants applicable to the case *without reference to such policies or if it attempts to imagine what those policies might be,* as the court would do in searching for an isolated finding or two that might qualify

---

5. *See* fn. 3, *supra.*

as a finding of underlying fact demonstrating "support" for one or more of the Board's findings of ultimate fact expressed "in statutory language." We shall assume the risk only in the interest of justice, owing to the administrative practice that has apparently sanctioned such final orders and the evident need to remind the Board of what APTRA § 16(b) requires.[6]

### Article 342–305 A(5)—Good Faith of the Applicants

■ Concerning the good faith of the applicants for the United Bank charter, the order recites only the following:

> After reviewing the entirety of the administrative record before it, the Board believes and finds that the applicants are acting in good faith. Both the amended *application* signed by all of the initial directors (Applicant's Exhibit 15) *and the unchallenged testimony* given at the July 1985 hearing (R. II–12) support the conclusion that the application was and is made in good faith. The Board so finds.

(Emphasis added). In essence, the foregoing recitation in the order merely declares that the ultimate finding of good faith rests solely upon the uncontradicted testimony of a witness or witnesses (a portion of the evidence, presumably) and the contents of the application itself. No finding of underlying fact is stated which might connect this evidence and document to the finding of ultimate fact; rather, the Board leaps directly from such evidence and such document to the finding of ultimate fact itself. Under the express provisions of APTRA § 16(b), as construed in the *Charter Medical* opinion, the Board was bound to supply the underlying facts and thus the nexus between the evidence and the choice of ultimate facts it made. It did not. We hold, therefore, that this aspect of the order does not comply with APTRA § 16(b).

**6.** We were informed in oral argument on submission of the appeal that the Board directed the "winning" party to prepare the findings of fact, as well as the balance of the order. This practice mocks the "expertise," the special

### Article 342–305 A(3)—Anticipated Volume of Business Indicating Profitable Operation

■ Concerning the prospect of a volume of business indicating profitable operation of United Bank, the following remains in the Board's order after deletion of the summaries of the evidence and contentions of the parties:

> (1) the proposed bank could and would be profitable during the second year of operation, based upon accumulated total deposits of $6,000,000, $11,000,000, and $16,000,000 by the end of each of the first three years of operation, and loans of $4,200,000, $7,700,000, and $11,200,000 for those same three years.
>
> (2) the total amount of business presently held by the eight protesting banks is not reflected in the record.
>
> (3) the Marble Falls National Bank had $438,000 in deposits from the Horseshoe Bay Area in October 1984.

In substance, the conclusion that the new bank "could and would be profitable during the second year of operation" is nothing more than a *restatement* of the finding of ultimate fact in question; it does not "support" in any way the finding of ultimate fact. That the order nakedly recites the expected amount of deposits and loans for each of the three years does not constitute "support" for the finding of ultimate fact because the order is silent with regard to any factors that might affect the *profit* derived from such loans and deposits—the expense entailed in obtaining and managing such loans and deposits, for example—which is the essence of the statutory criterion. The amount of local deposits held by a nearby bank in October 1984 is similarly uninformative except that it might indicate that the estimates for United Bank are apparently high, being more than ten times greater than those held by the nearby bank. We find that the foregoing, if they be considered findings of "underlying fact," do not fairly and reasonably support

knowledge and experience, that justifies the great powers of discretion that must, of necessity, be delegated to State administrative agencies by the Legislature.

the Board's finding of ultimate fact, as *Charter Medical* explicitly requires. 665 S.W.2d at 451. We hold, therefore, that this aspect of the order does not comply with APTRA § 16(b).

### Article 342–305 A(4)—Directors and Officers with Banking Experience, Ability, and Standing to Render Success of the Proposed Bank Probable

█ Concerning the attributes of the proposed directors of United Bank, the Board's order recites brief personal histories pertaining to each individual. The purported findings of underlying fact that pertain to Donald Adams and Robert Upton unquestionably imply that both have many years of banking experience, but there are no comparable findings with regard to the banking experience of the remaining four individuals and none that purport to suggest that their non-banking experience and their "ability and standing" will in some manner promote the success of the bank. We find in consequence that the purported findings of underlying fact do not fairly and reasonably permit the inference which the Board made in its finding of ultimate fact relative to the statutory criterion in question. This is what *Charter Medical* requires. 665 S.W.2d at 451. We hold, therefore, that this aspect of the order does not comply with APTRA § 16(b).

### Article 342–305 A(2)—Adequate Capital Structure

█ Concerning the adequacy of the capital structure proposed for United Bank, the order states as follows:

The total capital structure or capitalization of the United Bank Horseshoe Bay is $1,500,000: consisting of $600,000 in capital, $600,000 in surplus, and $300,000 in reserves or undivided profits (Applicant's Exhibits 15 and 16). *The testimony* in the record *reflects* that this capitalization is adequate for the fixed assets, the deposits projected, and the initial operations of the bank (R. 9). There does not appear to be any significant challenge to the adequacy of the capital in the record before the Board. The Board believes and finds that the total capitali-

zation of the United Bank Horseshoe Bay of $1,500,000 meets the statutory requirement and is adequate for the operation of the bank.

(Emphasis added). Again, the substance of this portion of the order is simply to *re-state* the finding of ultimate fact, to the effect that the specified amounts render the capital structure of the proposed bank "adequate." Moreover, this conclusion is expressly based only upon the *evidence* adduced in the case; it does not even purport to rest upon any findings of underlying fact. It appears that the Board relied upon the fact that the adequacy of the capital structure was not *significantly* challenged, leaving unanswered whatever issues might lie behind the cryptic qualifier and ignoring the fact that applicant has the burden of proof. We find in subdivision D of art. 342–305 that the Board is authorized to determine *from the application* itself the sufficiency of the proposed capital structure, provided the application is *unopposed.* The same statute is quite explicit, however, that this must be done from the Board's evidentiary determinations ("good and sufficient proof") when the application *is* opposed, as it was here, and evidence is adduced by the applicants in order to meet their burden of proof. If evidence was offered on the criterion, as presumably it was, then the Board was required by that statute, by APTRA 16(b), and by *Charter Medical,* to state in its order the underlying facts upon which the statutory criterion was justified in the opinion of the Board. 665 S.W.2d at 451. The order does not contain such findings, and in consequence one may not say that what *is* stated in the order fairly and reasonably supports the finding of ultimate fact to which we refer in this paragraph. We hold, therefore, that this aspect of the order does not comply with APTRA § 16(b).

Any one of the foregoing several defects in the Board's order requires that it be reversed, for art. 342–115 is quite explicit that *all five* criteria must be established affirmatively before a charter may issue. That is to say, the judgment of the district court affirming the order may be reversed

for any one of the defects discussed above. Accordingly, we reverse the judgment below and remand the cause to that court with instructions that it be remanded to the Board for further proceedings not inconsistent with our opinion.